UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| YELLOW BOOK USA, INC. et al. | : | Case No.: 3:10-cv-025 |
| Plaintiffs, | : | |
| | : | Judge Thomas M. Rose |
| v. | : | |
| | : | **AFFIDAVIT OF MARIA MITCHELL** |
| STEVEN M. BRANDEBERRY | : | |
| Defendant. | : | |

COMMONWEALTH OF PENNSYLVANIA    :
                                                              : SS.
COUNTY OF MONTGOMERY    :

I, Maria Mitchell, after being duly sworn and cautioned, state that the following is based on my personal knowledge, understanding and belief, and that I am competent to testify to matters stated herein.

1.    I am the AVP-Advertising/PR/Branding of Yellow Book USA, Inc. ("Yellow Book").

2.    Yellow Book is an independent publisher of print and Internet-based yellow-pages directories in the State of Ohio and elsewhere throughout the United States.

3.    The company's online directory, yellowbook.com, reaches millions of users via computers and mobile phones through organic web searches and through Yellow Book's network of partner sites.

4.    Since 2007, Yellow Book has published a yellow pages directory in Champaign County, Logan County, Union County and Madison County, Ohio under the name "Amtel Directories" through rights it acquired pursuant to an Asset Purchase Agreement and Bill of Sale between BP White Directories, LLC, d/b/a Amtel Directories

**EXHIBIT
1**

and Yellow Book USA, Inc. dated August 8, 2007.  A true and accurate, partially redacted copy of those documents is attached to this Affidavit as Exhibit A.

     5.      Attached as Exhibit B are true and accurate copies of covers from Yellow Book's most recent yellow pages directories in Champaign County, Logan County, Union County and Madison County, Ohio, which utilize the Amtel Directories name and mark.

     FURTHER AFFIANT SAYETH NAUGHT.

Sworn to and subscribed in my presence on March 25, 2010.

_Susan C. McAndrew_
Notary Public

My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Susan C. McAndrew, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires Jan. 26, 2013
Member, Pennsylvania Association of Notaries

766152.2

EXECUTION COPY

Yellow Book USA, Inc.
398 RexCorp Plaza
Uniondale, New York 11556

August 8, 2007

BP White Directories, LLC
d/b/a Amtel Directories
35 Monument Square
P.O. Box 825
Urbana, Ohio 43078-0825

Ladies and Gentlemen:

This letter, when countersigned by you, will constitute a definitive asset purchase agreement between BP White Directories, LLC d/b/a Amtel Directories, an Ohio limited liability corporation (the "Company"), and Yellow Book USA, Inc., a Delaware corporation ("Yellow Book").

1. Sale and Purchase of Assets; Purchase Price; Closing

a. Sale and Purchase. The Company shall sell to Yellow Book, and Yellow Book shall purchase from the Company, all of the Company's assets relating to the publication and distribution of the Company's Champaign County, Logan County, Union County and Madison County yellow pages telephone directories in the State of Ohio (each a "Directory" and collectively, the "Directories"), including, without limitation, inventory and work in process; accounts receivable; furniture, fixtures and equipment (including computer equipment); trademarks, trade names, copyrights, computer programs and other intangible property, including, without limitation, all of the Company's right, title and interest to the names "Amtel Directories," and "Champaign County," "Logan County," "Union County," and "Madison County," and all URLs owned or used by the Company in the Business (as hereinafter defined) including those names or similar names; all assets relating to "http://www.AMTELdirectories.com," and "http://www.comments@amteldirectories.com"; customer lists; mailing lists; telephone and fax numbers; all undistributed copies of the most recent editions of the Directories to be published and all other editions of the Directories published prior to the date hereof; and rights under contracts and agreements set forth on Schedule A attached hereto and made a part hereof. For the avoidance of doubt, Yellow Book is not acquiring cash on hand or deposited to the Company's bank account(s) as of the close of business on the last business day prior to the Closing Date (as hereinafter defined), the business name of BP White Directories, LLC, or any other asset of the Company not related to the Directories. In no event shall Yellow Book assume, or be deemed to have assumed, any of the Company's existing obligations with respect to the Directories, except for contracts, agreements and obligations incurred in the ordinary course of business and specifically disclosed to Yellow

EXHIBIT
A

Book and set forth on <u>Schedule A</u>. The publication and distribution of the Directories shall sometimes be referred to as the "Business".

b. <u>Purchase Price</u>. As full consideration for the aforementioned assets, Yellow Book shall (i) pay to the Company the sum of ██████████████████████ as set forth below; and (ii) assume the contracts, agreements and obligations set forth on <u>Schedule A</u>. The cash purchase price shall be paid by Yellow Book as follows:  (i) the sum of ████████████████████████████████ by wire transfer of immediately available funds on the Closing Date, (ii) the sum of ████████ ██████████████ (the "Second Payment") by wire transfer of immediately available funds on the Second Payment Date, and (iii) the sum of ████████████ dollars ██████████ (the "Third Payment") by wire transfer of immediately available funds on the Third Payment Date. The Second Payment Date shall be the date which is ten (10) days following the date on which ninety-five percent (95%) distribution of the 2007 edition of the Logan County Directory shall be completed and certified (with appropriate evidence of delivery) to Yellow Book. The Third Payment Date shall be the date that is the first anniversary of the Closing Date.

c. <u>Closing</u>. The closing of the transactions contemplated by this agreement shall take place on or about August 8, 2007. The actual date of the closing shall be referred to as the "Closing Date". It shall be a condition to each party's obligation to close that (i) all of the representations and warranties of the other party be true and correct as of the Closing Date and (ii) all covenants of the other party which should be performed as of the Closing Date have in fact been performed. Between the date of this agreement and the Closing Date, the Company shall operate the Business in the ordinary course.

2. <u>Company's Representations, Warranties and Covenants</u>

a. <u>Organization and Authority; Authorization; Consents</u>. The Company is a limited liability corporation duly organized, validly existing and in good standing under the laws of the State of Ohio and has the full power and authority to enter into and perform its obligations under this agreement and to carry on the Business as it is currently being conducted. The execution, delivery and performance of this agreement by the Company have been duly authorized by all requisite action of the Company. The execution, delivery and performance of this agreement by the Company will not (i) conflict with the Company's organizational documents, (ii) constitute a violation of any agreement, law or regulation to which the Company may be bound, or (iii) result in the creation of any lien or encumbrance on any of the assets being sold to Yellow Book pursuant to this agreement.

b. <u>Title to Assets</u>. The Company has, and at the closing Yellow Book will receive, valid title to all of the assets to be sold by the Company pursuant to this agreement, free and clear of any claim, lien or encumbrance, except for the lien, if any, of taxes not yet due and payable.

c. <u>Publication of Directories</u>. The Company published the two most recent editions of the Directories as follows: with respect to the Madison County Directory, in February 2006 and February 2007, respectively; with respect to the Champaign County

2

Directory, in May 2006, and May 2007, respectively; with respect to the Logan County Directory, in August 2005, and August 2006, respectively; and with respect to the Union County Directory, in November 2005 and November 2006, respectively. For the purposes hereof, the term "publish" shall mean the completion of distribution of the Directories.

     d. Revenues. The Company represents and warrants that the revenues (i.e. accrual based revenue, net of trade/barter revenue) for the latest published editions of the Directories, as of June 30, 2007, were as follows: with respect to the 2006 and 2007 editions of the Madison County Directory, ▮▮▮▮ (net of $0 in trade/barter revenue), and ▮▮▮▮ (net of ▮▮ in trade/barter revenue), respectively; with respect to the 2006 and 2007 editions of the Champaign County Directory, ▮▮▮ (net of ▮ in trade/barter revenue), and ▮▮▮ (net of ▮▮ in trade/barter revenue), respectively; with respect to the 2005 and 2006 editions of the Logan County Directory, ▮▮▮ (net of $0 in trade/barter revenue) and ▮▮▮ (net of $0 in trade/barter revenue) respectively; and with respect to the Union County Directory, ▮▮▮ (net of $0 in trade/barter revenue), and ▮▮▮ (net of $0 in trade/barter revenue), respectively.

     Revenues for the 2007 edition of the Logan County Directory will not be less than ▮▮▮ (net of $0 in trade/barter revenue).

     e. Accounts Receivable; Bad Debt; Deposits. The Company represents and warrants that, as of August 7, 2007, the amount of outstanding accounts receivable, for the latest published editions of the Directories and all prior editions of the Directories will be not less than ▮▮▮ and ▮▮▮ respectively. The accounts receivable for the Directories have arisen from bona fide transactions in the ordinary course of business and none of the accounts receivable are more than ninety (90) days past due. The Company is not aware of any circumstances affecting any customer that would have an adverse effect on Yellow Book's collection of the accounts receivable in the normal course of business.

     The Company agrees to bill and collect accounts receivable through the Closing Date in the normal course of business and will not accelerate billings or cash collection efforts. The Company will submit to Yellow Book on or before the Closing Date an accounts receivable file for the Directories compared to the same point in time the previous year. The Company will submit to Yellow Book an accounts receivable file by directory as of the Closing Date within three (3) days of the Closing Date. With respect to the 2007 Union County Directory to be published after the Closing Date, the Company has maintained its sales canvass practices (including cash deposit policy) in the normal course of business prior to the Closing Date.

     The Company represents that, with respect to the most recent editions of the Directories to be published, bad debt with respect to the 2007 edition of the Madison County Directory does not exceed ▮▮▮ of the cash revenue for such edition. Bad debt with respect to the 2007 edition of the Champaign County Directory does not exceed ▮▮▮ of the cash revenue for such edition. Bad debt with respect to the 2006 edition of the Logan County Directory does not exceed ▮▮▮

███ of the cash revenue for such edition. Bad debt with respect to the 2006 Union County Directory does not exceed ███████ of the cash revenue for such edition.

The Company further represents that the bad debt with respect to the 2006 edition of the Madison County Directory does not exceed ███████ of the cash revenue for such edition. Bad debt with respect to the 2006 edition of the Champaign County Directory does not exceed ███████ of the cash revenue for such edition. Bad debt with respect to the 2005 edition of the Logan County Directory does not exceed ███ of the cash revenue for such edition. Bad debt with respect to the 2005 Union County Directory does not exceed ███████ of the cash revenue for such edition.

The Company represents and warrants that the amount of customer deposits for advertising in the 2007 (or later) edition of the Logan County Directory collected by the Company as of August 7, 2007 is ███. The amount of sales commissions payable by the Company with respect to the advertising contracts for which such deposits have been collected is ███ of which ███ has been paid prior to the Closing Date. The amount of customer deposits for advertising in any Directory, other than the 2007 edition of the Logan County Directory to be published after the Closing Date is as follows: with respect to the Madison County Directory ███, with respect to the Champaign County Directory ███ and with respect to the Union County Directory ███.

f. <u>Distribution</u>. The Company distributed ███ copies of the latest editions of the Directories that were published, as follows: ███ copies of the 2007 edition of the Madison County Directory, with ███ copies available for secondary distribution; ███ copies of the 2007 edition of the Champaign County Directory, with ███ copies available for secondary distribution; ███ copies of the 2006 edition of the Logan County Directory, with ███ copies available for secondary distribution; and ███ copies of the 2006 edition of the Union County Directory, with ███ copies available for secondary distribution. The Company has provided Yellow Book with copies of the print bills and U.S. Postal Service receipts, or other evidence reasonably satisfactory to Yellow Book, which confirms the foregoing distribution figures.

g. <u>Customer Information</u>. The Company will provide Yellow Book with the following customer information with respect to the Directories within three (3) days following the Closing Date: all customer contracts for the 2005, 2006 and 2007 editions of the Directories as of the Closing Date, a schedule showing all accounts receivable for the 2007 and all earlier editions of the Directories, reports that show the revenue, cash collected against receivables and amount of write-offs for such editions of the Directories, and a schedule showing all customer deposits for advertising in the 2007 Logan County and Union County Directories. The Company will cooperate with Yellow Book with respect to the electronic transfer of working ad files for all display, coupon, cover and specialty ads.

h. <u>Taxes</u>. The Company has timely filed all federal, state and other tax returns with respect to the Business required by law to be filed by it, and each of those returns is true and correct in all material respects. There are no claims pending or, to the best of the Company's knowledge, threatened against the Company for past due taxes with respect

to the Business. All taxes with respect to the Business that are or were required by law to be withheld or collected by the Company have been duly withheld or collected and paid to the proper taxing authority.

i. <u>Litigation; Compliance with Law</u>. There is no litigation, proceeding or governmental investigation pending, and there is no order, injunction or decree outstanding against, or relating to the Company with respect to the Business or any of the assets being sold to Yellow Book pursuant to this agreement. The Company is not in violation of any applicable law, regulation, or any other requirement of any governmental body or court relating to the Business, and no notice has been received by the Company alleging any such violation. The Company shall retain all liability for publishing errors that may be asserted by customers of the Business in connection with all editions of the Directories published prior to the Closing Date and the 2007 Logan County Directory to be published after the Closing Date. Any and all claims of Steven Brandeberry against the Company and/or the Owner have been fully and finally resolved by binding arbitration and the determination in such arbitration is final and not subject to further arbitration proceedings or judicial appeal.

j. <u>Brokers</u>. The Company has not employed any broker or finder in connection with the transactions contemplated by this agreement.

k. <u>Competitors</u>. The Company does not have knowledge of any new or planned yellow pages telephone directories that cover or will cover, as the case may be, any portion of the geographical areas covered by the Directories with the exception of CT Communications in Champaign County.

l. <u>Material Contracts</u>. Set forth on <u>Schedule B</u> is a list of all material contracts relating to the Business. Material contracts include any contract, license or other agreement, whether in writing or not in writing, (i) which involves payment by the Company of $5,000 or more per year or (ii) which is material to the sale of advertising in, or to the printing, editorial content or distribution of the Directories. Notwithstanding the disclosure of a material contract on <u>Schedule B</u>, Yellow Book is assuming only those contracts, agreements and obligations listed on <u>Schedule A</u>.

m. <u>Furniture, Fixtures and Equipment</u>. Set forth on <u>Schedule C</u> is a list of all furniture, fixtures and equipment (including computer equipment) relating to the Business and the estimated value of each item. A list of all furniture, fixtures and equipment that will be retained by the Company is set forth on <u>Schedule D</u>.

3. <u>Yellow Book's Representations and Warranties</u>

a. <u>Organization and Authority; Authorization; Consents</u>. Yellow Book is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has the full power and authority to enter into and perform its obligations under this agreement. The execution, delivery and performance of this agreement by Yellow Book have been duly authorized by all requisite corporate action of Yellow Book. The execution, delivery and performance of this agreement by Yellow Book will not (i) conflict with Yellow Book's certificate of incorporation or bylaws, or

(ii) constitute a violation of any agreement, law or regulation to which Yellow Book may be bound.

b. <u>Brokers</u>.  Yellow Book has not employed any broker or finder in connection with the transactions contemplated by this agreement.

4. <u>Further Agreements of the Parties</u>

a. <u>Covenants Against Competition and Solicitation</u>.  To accord to Yellow Book the full value of its purchase, for a period of five (5) years after the Closing Date neither the Company nor William N. White (the "Owner") nor Amy O'Connor ("O'Connor") shall, directly or indirectly, engage (as an owner, consultant, or employee), or be interested in any business or entity that engages, on its or his own behalf or on behalf of any third party, in the publication of any telephone directories (printed or electronic) to be distributed anywhere in the geographical area in which the Company currently publishes the Directories and within fifty (50) miles of such areas (the "Restricted Area").

For a period of five (5) years after the Closing Date, neither the Company nor the Owner nor O'Connor shall, directly or indirectly, employ or solicit for employment or consulting, on its own behalf or on behalf of any other person or entity, or otherwise encourage the resignation of, any person who is then, or at any time within the immediately preceding twelve (12) months has been, an employee of the Business engaged in the sale of advertising in the Directories or in any telephone Directories published by Yellow Book within the Restricted Area.

The covenants against competition and solicitation set forth in this Section 4(a) are conditioned upon Yellow Book's faithful performance of its obligations as set forth in this agreement, including payment of the purchase price in accordance with Section 1(b) above.

Subject only to the occurrence of a closing of the transactions contemplated by this agreement, neither the Company nor the Owner nor O'Connor shall at any time hereafter disclose to anyone (other than to employees, attorneys and accountants who need to know in connection with the conduct of the business of the Company not being sold to Yellow Book), or use in competition with the Business, any information with respect to any confidential or secret aspect of the Business.  The Company and Yellow Book shall enter into such confidentiality agreement as the parties shall mutually agree.

The Company and the Owner and O'Connor each acknowledge that the remedy at law for breach of the provisions of this Section 4(a) will be inadequate and that, in addition to any other remedy Yellow Book may have, it shall be entitled to an injunction restraining any breach or threatened breach, without any bond or other security being required and without the necessity of showing actual damages.  If any court construes any covenant in this section 4(a) to be unenforceable in any respect, the court may reduce the duration or area to the extent necessary so that the provision is enforceable, and the provision, as reduced, shall then be enforceable.

The Owner and O'Connor hereby acknowledge that they will benefit from the transactions contemplated by this agreement and agrees that such benefit constitutes sufficient consideration for their covenants in this Section 4(a).

b. _Access._ For a period of two (2) years after the Closing Date, each party shall provide the other party with commercially reasonable access during normal business hours to its books, records and other information relating to the Business to the extent that they relate to the condition or operation of the Business prior to the closing and are requested by the party to prepare its tax returns, to respond to third party claims, or for any other legitimate purpose specified in writing. Each party shall have the right, at its own expense, to make copies of any such books and records.

c. _Employees._ Attached hereto as _Schedule E_ is a list of the employees and other sales personnel (whether employee or independent contractor) of the Business. Subject to the second paragraph of this Section 4(c), Yellow Book shall have the right, but not the obligation, to make offers of employment to the employees and sales personnel of the Business. Any such employee to whom Yellow Book extends an offer of employment, who accepts Yellow Book's offer, shall receive credit for his or her years of service with the Company for purposes of vesting under Yellow Book's benefit plans. Yellow Book shall not have any obligation to continue any such person's employment, nor shall it have any obligation to provide any employee with benefits other than those it provides to similarly situated employees in the ordinary course of its business.

Yellow Book shall offer to employ those employees of the Company listed on _Schedule F_ (each, an "Eligible Employee") commencing on the date listed on _Schedule F_ (the "Eligible Employment Date"). If an Eligible Employee accepts the offer to commence employment as of the Eligible Employment Date, he or she shall become an employee of Yellow Book as of the Eligible Employment Date. Nothing herein shall limit the right of Yellow Book to terminate the employment of any such employee at any time after the Eligible Employment Date, or to alter the salary, wages or benefits payable to any such employee at any time after the Eligible Employment Date. The Company shall be responsible for the payment to the Eligible Employees of all compensation and benefits earned through the Eligible Employment Date and the Company also shall retain and discharge all liabilities and obligations with respect to all other employees. The Company shall be responsible for the payment of any severance obligation or other, similar benefits payable to any of its employees or former employees, including any Eligible Employees, in connection with the transactions contemplated hereby. After the Eligible Employment Date, Yellow Book shall be responsible for payment of all compensation and benefits, payable to Eligible Employees earned after the Eligible Employment Date.

The Company shall pay a bonus to the employees listed on _Schedule G_, (which for purposes of this paragraph shall include Amy O'Connor) in the amounts shown on _Schedule G_ (the "Transition Bonus"). The Company and Yellow Book shall each be responsible for payment of ████████████ of the Transition Bonus. The Transition Bonus shall be payable on the dates shown on _Schedule G_ (the "Transition Bonus Payment Date") in accordance with the terms set forth in the Transition Bonus letter attached as _Schedule H_. The Transition Bonus shall not be payable to the employee if the

7

employee is not employed by Yellow Book on the Transition Bonus Payment Date, unless such employee is terminated by Yellow Book for any reason other than for cause. Yellow Book shall have the right of setoff against the Third Payment for any breach by the Company of its obligations to make the Transition Bonus payments as set forth in this Section 4(c). On the Closing Date, or on such earlier date as may be agreed by the Company and Yellow Book, the Company shall send a letter substantially in the form attached hereto as Schedule H, to the employees of the Company listed on Schedule G. The Company shall provide Yellow Book with copies of each such letter prior to the Closing Date.

d. Further Assurances. At any time and from time to time after the Closing Date each party shall, without further consideration, execute and deliver to the other such other instruments of transfer and assumption and shall take such other commercially reasonable action as the other may reasonably request to carry out the transactions contemplated by this agreement. The Company and Owner shall refrain from making any statements or taking any action following the closing that is detrimental to the Business as then being conducted by Yellow Book.

e. Conduct of the Business Prior to Closing. The Company shall conduct the Business in the ordinary course between the date hereof and the Closing. Without in any way limiting the foregoing, the Company shall preserve the present business operations, organization and goodwill of the Company and preserve the present relationships of the Company with its customers, users and others material to the Business.

f. Indemnification. The Company and each Owner, jointly and severally, shall indemnify and hold Yellow Book harmless from any and all claims, liabilities, damages, losses, judgments, fines, penalties, actions, causes of action, suits, costs and expenses, including reasonable attorneys' fees and expenses (and including reasonable attorneys' fees and expenses incurred by Yellow Book in any action against the Company and/or Owner to enforce this indemnity) (collectively, "Yellow Book Losses"), whether or not involving a third party claim, incurred by Yellow Book by reason of (i) the failure of any representation or warranty of the Company to be true and correct in all respects as of the date hereof and as of the Closing Date and/or (ii) a breach by the Company of any covenant or agreement of the Company contained herein and/or (iii) claims arising out of the operation of the Business prior to the Closing Date, including any such claims asserted after the Closing Date and/or (iv) claims that may be asserted by Steve Brandeberry ("Brandeberry") or any person or entity affiliated with or claiming through Brandeberry in any way relating to the ownership and/or operation of the Company and any of the business of the Company, including without limitation, any or all of the Directories and/or the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated by this Agreement. Yellow Book shall indemnify and hold the Company and each Owner harmless from any and all claims, liabilities, damages, losses, judgments, fines, penalties, actions, causes of action, suits, costs and expenses, including reasonable attorneys' fees and expenses (and including reasonable attorneys' fees and expenses incurred by the Company and/or Owner in any action against Yellow Book to enforce this indemnity) (collectively, "Company Losses"), whether or not involving a third party claim, incurred by the Company and/or Owner by reason of (i) the failure of any representation or warranty of the Yellow Book to be true

and correct in all respects as of the date hereof and as of the Closing Date and/or (ii) a breach by Yellow Book of any covenant or agreement of the Yellow Book contained herein and/or (iii) claims arising out of the operation of the Business following the Closing Date. The representations and warranties of the Company set forth in sections 2a, 2b and 2h shall survive indefinitely and all other representations and warranties of the Company shall survive until the third anniversary of the Closing. Yellow Book shall have the right of setoff against the Third Payment for any Yellow Book Losses attributable to a breach of the representations, warranties and/or covenants of the Company set forth in this agreement. The foregoing right of setoff shall not in any way limit (with respect to amount, timing or otherwise) Yellow Book's rights to indemnification for Yellow Book Losses under this Section 4f.

g. <u>Production and Distribution of Directories</u>. With respect to the 2007 edition of the Logan County Directory, the Company shall be responsible for the following: all functionality and costs associated with the production and pagination of such Directory (including, without limitation, completion of ads, artwork and pagination); delivery of such edition to the printer; and coordination with the printer and distribution companies to complete distribution of such edition consistent with the Company's past practice. The completed ads, artwork and pagination of such directory shall be submitted to Yellow Book for final approval prior to delivery to the printer.

The Company has arranged for the 2007 Logan County Directory to be printed by Liberty Press LLC at an approximate cost of ▮▮▮▮▮▮ Yellow Book shall be responsible for payment of such costs upon receipt of documentation reasonably satisfactory to Yellow Book of such costs.

The Company has arranged for the 2007 edition of the Logan County Directory to be distributed by the Company at an approximate cost of ▮▮▮▮▮ Yellow Book shall be responsible for payment of such costs upon receipt of documentation reasonably satisfactory to Yellow Book of such costs.

h. <u>Billing and Collection</u>. The Company will, on behalf of Yellow Book, continue to bill and collect accounts receivable in accordance with its customary practice, and shall provide customer service support, including adjustments (subject to Yellow Book approval), for a period from the Closing Date to the last day of the fourth full month following the Closing Date, and shall remit collected funds to Yellow Book on a weekly basis. The Company shall notify Yellow Book of commissions payable to the Company's current employees and sales personnel as a result of the collection of such accounts receivable, consistent with the Company's past practice and in accordance with Section 4(i) below. Yellow Book shall pay, at cost, for the per diem services of personnel required to perform such billing and collection services.

i. <u>Commissions</u>. The Company represents that an amount not to exceed ▮▮▮▮▮▮ is payable as commissions to the Company's current employees and sales personnel with respect to the accounts receivable for the latest published editions of the Directories as such accounts receivable are collected. Yellow Book will pay such commissions payable to the Company's current employees and sales personnel as a percentage of accounts receivable collected following the Closing Date, consistent with the Company's past

practice. The Company will pay all commissions payable to its current employees and sales personnel with respect to amounts collected by the Company on or before the Closing Date. A description of the Company's Commission Pay Plan applicable to the payment of such commissions is attached as Schedule I.

5. Miscellaneous.

a. Entire Agreement. This agreement contains, and is intended as, a complete statement of all of the terms of the arrangements between the parties with respect to the matters provided for, supersedes any previous agreements and understandings between the parties with respect to those matters, and cannot be changed or terminated orally. Except as specifically set forth in this agreement, there are no representations or warranties by any party in connection with the transactions contemplated by this agreement. This agreement may not be assigned without the consent of the other party hereto, and subject to such proviso, it shall be binding upon and inure to the benefit of the parties hereto and their respective permitted assigns and successors.

b. Governing Law. This agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflicts of laws principles.

c. Publicity. Neither party shall issue or cause the publication of any press release or other public announcement with respect to the transactions contemplated by this agreement without the consent of the other party, which consent shall not be unreasonably withheld or delayed, except as may be required by law or the regulations or policies of any securities exchange, in which case the party required to make the release or statement shall allow the other party reasonable time to comment on such release or statement in advance of such issuance.

d. Counterparts. The parties may execute this agreement in counterparts, including facsimile counterparts, and on separate counterparts, but all such counterparts shall constitute the same instrument.

**[END OF TEXT – SIGNATURES ON NEXT PAGE]**

**[SIGNATURE PAGE]**

Please countersign the enclosed copy of this agreement on behalf of the Company and individually, as indicated below.

Very truly yours,

YELLOW BOOK USA, INC.

By: _____
Name: Timothy Zulel
Title: Sr. VP - MrA

Acknowledged and Agreed:

BP WHITE DIRECTORIES, LLC
d/b/a AMTEL DIRECTORIES

By: _____
William N. White
Owner/CEO

_____
William N. White, for the purposes
described in sections 4a, 4b, 4d and 4f of
this agreement

_____
Amy O'Connor, for the purposes
described in Section 4a. of this
agreement

11

**Schedule A**

Leases, Contracts and other Obligations to be Assumed by Yellow Book



**Schedule B**

Material Contracts



## Schedule C

Furniture, Fixtures and Equipment Included in the Purchase

| Item | Quantity | Description |
|------|----------|-------------|
| ████ | ██ | |
| ████████ | ██ | ██████████ |
| ████████ | ██ | ████████ |
| ███████ | █ | |
| ███████ | █ | |
| ████████ | ██ | |
| ███████ | | |
| ████████ | ██ | |
| ███████ | ██ | |
| ████████ | ██ | |
| ███████ | ██ | |
| ██████ | | ████████ |
| ███████ | ██ | |

14

**Schedule D**

Furniture, Fixtures and Equipment Retained by the Company

| Item | Quantity | Description | Location |
|------|----------|-------------|----------|
| ▮▮▮▮ | ▮ | ▮▮▮ | |
| ▮▮▮ | ▮ | | |
| ▮▮▮ | ▮ | | ▮▮▮ |
| ▮▮▮ | ▮ | ▮▮ | ▮▮▮ |
| ▮▮▮ | ▮ | ▮▮ | |
| ▮▮▮ | ▮ | | |

**Schedule E**

List of employees of the Business and sales personnel of the Business (whether employees or independent contractors)

| NAME | POSITION |
|------|----------|
| ███████ | Graphics |
| ███████ | Assistant, Part time |
| ███████ | Administrative Asst |
| ███████ | Administrative Asst |
| ███████ | Sales |
| ███████ | Sales |
| ███████ | VP Sales |
| ███████ | General Mgr |

**Schedule F**

List of Employees Who Will Receive Offers of Employment From Yellow Book *

| Eligible Employee | Eligible Employment Date |
|---|---|
| ██████████ | August 8, 2007 |
| ██████████ | August 8, 2007 |
| ██████████ | August 8, 2007 |
| ██████████ | August 8, 2007 |
| ██████████ | August 8, 2007 |
| ██████████ | August 8, 2007 |
| ██████████ | August 8, 2007 |

*Amy O'Connor will be retained by Yellow Book as a consultant pursuant to a consulting agreement dated August 8, 2007.

**Schedule G**

List of Employees Who Will Receive a Transition Bonus

| Name | Current Position | Transition Bonus Amount | Company Share | Yellow Book Share | Transition Bonus Payment Date |
|------|------------------|-------------------------|---------------|-------------------|-------------------------------|
| ▮ | Asst | ▮ | ▮ | ▮ | 10/31/07 |
| ▮ | Asst | ▮ | ▮ | ▮ | 10/31/07 |
| ▮ | GM | ▮ | ▮ | ▮ | 10/31/07 |
| ▮ | Graphics | ▮ | ▮ | ▮ | 10/31/07 |
| ▮ | VP Sales | ▮ | ▮ | ▮ | 8/8/08 |
| ▮ | Sales | ▮ | ▮ | ▮ | 8/8/08 |
| ▮ | Sales | ▮ | ▮ | ▮ | 8/8/08 |
| ▮ | Assistant | ▮ | ▮ | ▮ | 10/31/07 |

*Amy O'Connor will be retained by Yellow Book as a consultant pursuant to a consulting agreement dated August 8, 2007.

## Schedule H

Form of Letter re Transition Bonus

**See attached**

**Schedule I**

Commission Pay Plan



EXECUTION COPY

## BILL OF SALE

This **BILL OF SALE** (this "**Bill of Sale**") is made and delivered as of this 8th day of August, 2007, by BP White Directories, LLC d/b/a Amtel Directories, an Ohio limited liability company, ("**Seller**"), for the benefit of Yellow Book USA, Inc., a Delaware corporation ("**Purchaser**"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (as hereinafter defined).

**WHEREAS**, Seller and Purchaser have entered into that certain Asset Purchase Agreement, dated as of August 8, 2007 (the "**Agreement**"), the terms of which are incorporated herein by reference, which provides, among other things, for the sale and assignment by Seller to Purchaser of the Assets.

**NOW, THEREFORE,** in consideration of the mutual premises contained in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Seller, and subject to the terms and conditions of the Agreement:

1.      Seller does hereby bargain, sell, grant, assign, transfer, convey and deliver to Purchaser, and its successors and assigns, forever, all of Seller's right, title and interest in and to all of the Assets to have and to hold, to Purchaser, and its successors and assigns, for its use forever.

2.      Seller hereby covenants with Purchaser and its successors and assigns that, from time to time after the date hereof, Seller will execute and deliver to Purchaser such instruments of sale, transfer, conveyance, assignment and delivery, consents, assurances and other instruments as may reasonably be requested by Purchaser in order to vest in Purchaser all of Seller's right, title and interest in and to the Assets and carry out the purpose and intent of this Bill of Sale and the Agreement.

3.      This Bill of Sale shall inure to the benefit of Purchaser and be binding upon the parties hereto and their respective successors and assigns.

4.      Nothing in this Bill of Sale, express or implied, is intended to or shall be construed to modify, expand or limit in any way the terms of the Agreement. To the extent that any provision of this Bill of Sale conflicts or is inconsistent with the terms of the Agreement, the Agreement shall govern.

5.      This Bill of Sale is executed and delivered pursuant to the Agreement.

6.      This Bill of Sale shall be governed by, and construed in accordance with, the laws of the State of New York, as applied to contracts made and performed entirely in such State.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

1

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, Seller has caused this Bill of Sale to be executed and delivered as of the day and year first above written.

BP WHITE DIRECTORIES, LLC d/b/a
AMTEL DIRECTORIES

By: _____

William N. White
Owner/CEO

2

**EXECUTION COPY**

### CERTIFICATE
### OF
### BP WHITE DIRECTORIES, LLC
### d/b/a AMTEL DIRECTORIES

August 8, 2007

The undersigned hereby certifies that he is the Owner and Chief Executive Officer of BP White Directories, LLC d/b/a Amtel Directories, an Ohio limited liability corporation (the "Company"), and that, as such, he is authorized to execute this Certificate on behalf of the Company. This Certificate is delivered in connection with the Asset Purchase Agreement, dated August 8, 2007 (the "Agreement"), by and among the Company and Yellow Book USA, Inc., a Delaware corporation (the "Purchaser"). Capitalized terms used but not otherwise defined herein shall have the meanings given such terms in the Agreement. The undersigned further certifies that:

1. The representations and warranties of the Company set forth in the Agreement, including all of the amounts set forth in such representations and warranties are true and correct as of the date of the Agreement and as of the Closing Date as though made at and as of the Closing Date.

2. The Company has performed and complied with all obligations and agreements required in the Agreement to be performed or complied with by it on or prior to the Closing Date, and Purchaser has received copies of such documents evidencing the performance thereof as Purchaser may reasonably request.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

1

IN WITNESS WHEREOF, the undersigned has executed this Certificate as of the date first above written.

_____
William N. White



# yellowbook™

# Union County
## Business and Residential Listings for all of Union County



Orange portion of map
reflects distribution
area of directory





937.642.6279
800.642.0087
www.whereprideresides.com

**UNION COUNTY**
OHIO

Chamber of Commerce
Convention & Visitors Bureau
Economic Development Partnership



Center of Science and Industry
333 West Broad Street
Columbus, Ohio 43215
614.228.COSI (2674)
www.cosi.org



UNION COUNTY
COVERED BRIDGE FESTIVAL

HELD
ANNUALLY
IN
SEPTEMBER

For more information visit:
www.unioncountycvb.com



*Nationwide local search on **yellowbook.com***
**To promote your business call 1-800-YB-YELLOW**



*Eco-friendly size - Packed with content*

EXHIBIT
B



## Madison County

**Business and Residential Listings for all of Madison County**

Plus Residential & Business
White Page Listings For:
Catawba, Harrisburg, Mechanicsburg,
Plain City, South Charleston,
South Vienna, Woodstock











For Tickets & Information:
**614-462-5250**
www.clippersbaseball.com

*Nationwide local search on* **yellowbook.com**
To promote your business call 1-800-YB-YELLOW



*New eco-friendly size - Still packed with content*



# yellowbook™

## Logan County

**Business and Residential Listings
for all of Logan County**



Orange portion of map
reflects distribution
area of directory



Amtel®
DIRECTORIES



DONATOS
PIZZA SUBS SALADS
Bellefontaine 937-592-1100 • 815 S. Main St

Rally at the Peak
937-599-2016
Check-Out
www.logancountyohio.com/tourism
Convention and
Tourist Bureau



Logan County Area
CHAMBER OF COMMERCE
937-599-5121
100 South Main St
Bellefontaine, OH 43311
www.logancountyohio.com



*Nationwide local search on* **yellowbook.com**
To promote your business call 1-800-YB-YELLOW



*New eco-friendly size - Still packed with content*



# Champaign County

Cable
Christiansburg
Fountain Park
Grandview Heights
Mechanicsburg
Mutual

North Lewisburg
Rosewood
St. Paris
Urbana
Westville
Woodstock

...and surrounding areas



Orange portion of map
reflects distribution
area of directory



## LINCOLN
### PROFESSIONAL SERVICES

*Commercial and Industrial Services*
*Carpet & Upholstery Cleaners*

### 937-653-8772
**Terry L. Rittenhouse**
1906 N. Ludlow Road • Urbana, OH 43078



*Champaign*
CHAMBER OF COMMERCE
& VISITORS BUREAU
• 937-653-5764 •
www.champaignohio.com
113 Miami Street, Urbana, OH 43078



*Nationwide local search on* **yellowbook.com**
To promote your business call 1-800-YB-YELLOW



*New eco-friendly size - Still packed with content*