UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| YELLOW BOOK USA, INC. et al. | : | Case No.:  3:10-cv-025 |
| Plaintiffs, | : | Judge Thomas M. Rose |
| v. | : | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM** |
| STEVEN M. BRANDEBERRY | : | |
| Defendant. | : | |

**I.    INTRODUCTION**

In his one-paragraph memorandum in opposition to Yellow Book's motion for summary judgment, Defendant Steven Brandeberry ("Brandeberry") states that "Plaintiffs' employees have made several statements to customers falsely claiming Mr. Brandeberry does not have the right to use the Am-Tel name, and other ill statements about him."  Brief, p. 1.  Brandeberry does not cite to any deposition testimony, documents or discovery responses to support his argument.  Rather, he relies entirely on eight affidavits[1] from customers who claim that Yellow Book employees made statements concerning Brandeberry's business practices and ability to publish a competing yellow pages directory.  Yellow Book denies that its employees and representative made any such statements to these customers.  However, even if the statements contained in the affidavits were actually published, summary judgment must

---

[1] Two of the eight affidavits must be stricken for failure to disclose the identities of the individuals in discovery.  Heather Downs and Amy Davis were never identified in Brandeberry's Rule 26(a) disclosures, in Brandeberry's Responses to Interrogatories, or in Brandeberry's Lay Witness Disclosure.  Because these witnesses have been identified for the first time after the discovery cutoff, and since Yellow Book has been precluded for conducting discovery on their testimony, their affidavits should be stricken.

1

still be granted since the purported statements are either true or protected opinions, and since Brandeberry cannot demonstrate damages.

## II. ARGUMENT

### A. Statements Made By Yellow Book Employees Are True

"Truth is a complete defense to a claim for defamation." *Novotny v. Reed Elsevier*, 2007 U.S. Dist. LEXIS 66608, *77 (S.D. Ohio 2007) (citing *Ed Schory & Sons, Inc. v. Francis*, 662 N.E.2d 1074, 1083 (Ohio 1996); Ohio Rev. Code § 2739.02 ("In an action for a libel or a slander, the defendant may allege and prove the truth of the matter charged as defamatory. Proof of the truth thereof shall be a complete defense."); *Nat'l Medic Servcs. Corp. v. E. W. Scripps*, 61 Ohio App. 3d 752, 755 (1989) ("'It is sufficient [in defending against a defamation action] to show that the imputation is substantially true, or as it is often put, to justify the "gist," the "sting," or the substantial truth of the defamation.'")

For example, several of the affiants allege that Yellow Book employees advised that "Mr. Brandeberry's book was illegal." See, e.g., Lawrence Aff., ¶ 3, Davis Aff., ¶4, Canestraro Aff., ¶ 4, Wright Aff. ¶ 4. However, as set forth in Yellow Book's Motion for Partial Summary Judgment, since July 2009, Brandeberry has improperly used Yellow Book's Amtel name and marks to market and sell a competing yellow pages directory in several counties. In fact, undisputed evidence demonstrates that there is actual confusion in the marketplace relating to an affiliation between Brandeberry's yellow pages directory and Yellow Book's Amtel Directory. See generally, Yellow Book's Motion for Partial Summary Judgment, pp. 12-14. Since Brandeberry's use of the Amtel name and marks

2

infringes upon Yellow Book's trademark, his conduct is indeed "illegal" and improper, and any such statements are truthful.

Likewise, the Affidavit of Robert Arnold states that Yellow Book employees advised him that Brandeberry "had no right to put out a book and that there was a legal action against him." Arnold Aff., ¶ 4. Once again, both statements are true. Brandeberry has no right to put out a book which infringes upon Yellowbook's trademarks. Moreover, there was, and is, a legal action against him relating to his conduct in promoting and selling his yellow pages directory. Not surprisingly, it is this lawsuit. As these statements are true, they cannot support a claim for defamation.

### B. Statements Made By Yellow Book Are Opinions

The Ohio Constitution also protects opinions. *Vail v. The Plain Dealer Publishing Company*, 72 Ohio St. 3d 279, 281, 649 N.E.2d 182 (Ohio 1995). To determine whether a statement is one of fact or one of opinion, the Court should consider "the specific language used, whether the statement is verifiable, the general context of the statement, and finally, the broader context in which the statement appeared." *Id*. at 282. This test is more "fluid" than a bright-line test, for "[e]ach of the four factors should be addressed, but the weight given to any one will conceivably vary depending on the circumstances presented." *Id.* Whether or not a statement is an opinion is a question of law for the Court. *Scott v. News-Herald,* 25 Ohio St.3d 243, 250, 496 N.E.2d 699 (1986); *Wampler v. Higgins*, 93 Ohio St.3d 111, 117-120, 752 N.E.2d 962 (2001).

The first factor is the specific language used. The words used are to be afforded their common and ordinary meaning. *Scott*, 25 Ohio St.3d at 250, 496 N.E.2d 699; *Wampler*, 93 Ohio St.3d at 127, 752 N.E.2d 962. The Court must consider whether the

words used normally convey information of a factual nature, or hype and opinion. *Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 749 (N.D. Ohio 2008). Words lacking precise meaning ordinarily are not actionable. *Id.*

The second factor is whether the statements are verifiable. A statement is deemed verifiable if: (1) the speaker represents that she has knowledge or evidence that substantiates the statements, and (2) there is a plausible method to verify the statements. *Scott*, 25 Ohio St.3d at 251-52, 496 N.E.2d 699.

The third factor is the context of the statements, which requires consideration of the alleged defamation in the context of other accompanying statements. Important is the tenor, including whether the statements appear as characterized by objective facts or subjective hyperbole. *Vail*, 72 Ohio St.3d at 282.

Fourth, the Court must consider the broader social context in which the statements appear. Under this factor, the Court considers the type of writing and the placement of the statements: "different types of writing have … widely varying social conventions which signal to the reader the likelihood of a statement's being either fact or opinion [citations omitted]." *Scott*, 25 Ohio St.3d at 253, 496 N.E.2d 699.

Here, the remaining statements purportedly made by Yellow Book employees constitute protected opinion. Brandeberry's claims that Yellow Book employees stated that Brandeberry:

- was a "con artist"
- "had done illegal things in the past"
- "had not refunded money to former customers of his when he had a previous book," and

4

- "took people's money without returning it."

Brandeberry's affiants also assert that Yellow Book representatives stated that "Brandeberry's book would not be published," that they should "call the bank to see if the check cleared," that they "would not get their money back" and would "lose their deposit."

Even if Yellow Book employees made such statements (which they deny), they constitute opinions which are protected under Ohio law. For example, any statements that Brandeberry was a "con artist" or "did illegal things in the past" are pure opinion, as they cannot be verified, and do not state objective facts. Indeed, courts in other states have expressly held that calling someone a "con artist" is protected opinion. *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 658 N.E.2d 1225, 1231, 213 Ill. Dec. 204 (1st Dist. 1995) (private evaluation that plaintiff was a "con artist" was constitutionally protected opinion as statement did not imply facts and was not capable of proof or disproof); see also *Stepien v. Franklin*, 39 Ohio App.3d 47, 528 N.E.2d 1324 (Ohio App.,1988) (noting the arena of sports is "a traditional haven for cajoling, invective, and hyperbole," and therefore the reasonable reader was on notice that referring to the appellant as "stupid," "dumb," "buffoon," "nincompoop," "scum," "a cancer," "an obscenity," "gutless liar," "unmitigated liar," "pathological liar," "egomaniac," "nuts," "crazy," "irrational," "suicidal," "lunatic," was a statement of opinion).

Likewise, any purported statements regarding Brandeberry's inability to publish a book or the likelihood of the affiants getting their money back from him are also pure opinion. Once again, the is no meaningful way to verify any such statements. Moreover, none of the affidavits state that Yellow Book employees represented that they could

5

substantiate any of the allegations concerning Brandeberry's ability to publish or to return their money.

Finally, this Court must evaluate the context in which these statements were made. Since 2007, Yellow Book has published a yellow pages directory in Champaign County, Logan County, Union County and Madison County, Ohio under the name "Amtel Directories" through rights it acquired from B.P. White Directories, LLC. ("White") (See Plaintiffs' Motion for Summary Judgment relating to its claims, which is being filed concurrently herewith and incorporated by reference).

In July 2009, Brandeberry began marketing a competing yellow pages directory in Champaign County. 6/16/10 Deposition of Steven Brandeberry ("6/16/10 Brandeberry Dep."), p. 154-155.  Brandeberry sent letters to approximately 160 businesses in Champaign County, many of which were Yellow Book customers, inquiring as to their interest in a new yellow pages directory in that market. Id. at pp. 156-59; Dep. Ex. 9.  In those letters, Brandeberry stated that he is "interested in publishing the AMTEL Champaign County Telephone Directory again," and asked these potential customers whether they would be willing to shift their advertising dollars "to a new Champaign County AMTEL Telephone Directory." See Dep. Ex. 9.

Brandeberry then began actively soliciting customers for his competing directory. He developed a mock-up of a book which he showed potential customers during sales calls, which used the Amtel name and marks. 6/16/10 Brandeberry Dep., p. 182-83.  He generated business cards, envelopes, business documents, contracts and other stationery that used the Amtel name and marks. Id. at pp. 170, 172, 189-90, 191, 192-93; Dep. Exs. 5, 11, 14, 15, 16, 17.  Brandeberry created marketing materials for potential customers

6

using the Amtel name and mark. Id. at p. 184-85; Dep. Ex. 13.  In Brandeberry's correspondence with clients, he represented himself as the "publisher of American Telephone Directories, Inc. an Ohio based corporation known as AMTEL" and further asserted that he would be publishing a "full size and complete May, 2010 AMTEL Champaign County Telephone Directory." Id. at p. 199-200; Dep. Ex. 19.

Brandeberry entered the market passing off his yellow pages directory as that of Amtel.  There was actual confusion by customers with respect to affiliation between Brandeberry and Yellow Book, as noted by Brandeberry's sales associate, Phil Moorman:

> Q:   Did anybody express any confusion as to Yellowbook's affiliation with you?
>
> A.   Yes.
>
> Q.   Who?
>
> A.   I couldn't tell you.
>
> Q.   Describe what they – how they expressed that confusion?
>
> A.   We told them that we were AMTEL Directories and they had signed up a contract with AMTEL Directories, and then, apparently, their Yellowbook representative had gone in to solicit them as well and the Yellowbook representative told them, the customer, that they were AMTEL Directories.
>
> Q.   Did that customer call you back and ask about that?
>
> A.   Yes.
>
> Q.   Do you know who that customer was?
>
> A.   No.  I mean, there was a few of them, but I couldn't remember who they are.  When Yellowbook started going around saying that they were AMTEL Directories, that we were not AMTEL and they were AMTEL, a few people were confused and they called back to just verify that they signed up with the person that they wanted to sign up with.
>
> Q.   And you say that happened a few times?
>
> A.   Yeah.

7

December 9, 2010 Deposition Phillip Moorman ("Moorman Dep."), pp. 44-45.

Thus, any purported statements by Yellow Book employees were made in the context of repairing the damage that had been done by Brandeberry by infringing upon Yellow Book's trademarks. Yellow Book had every right to advise customers that Brandeberry's conduct was improper and impermissible, and to extricate itself from any perceived affiliation with Mr. Brandeberry and his newly formed company. Likewise, any purported statements were made to sophisticated businesspeople who were well-aware that Yellow Book and Brandeberry were competitors. Thus, any reasonable businessperson would have, and should have, recognized that these statements were opinions made by a competitor in a tight market for yellow pages advertising.

C.  **Brandeberry Has No Damages**

"In Ohio, when a statement is defamatory per se, a plaintiff may maintain an action for [defamation] and recover damages, without pleading or proving special damages.'" *Wagner v. Circle W Mastiffs*, 732 F. Supp. 2d 792, 805 (S.D. Ohio 2010) (quoting *Becker v. Toulmin*, 165 Ohio St. 549, 138 N.E.2d 391, 395 (Ohio 1956)). But when a statement is defamatory per quod, a plaintiff must plead and prove special damages. *Id*. (citing Becker, 138 N.E.2d at 397).[2]

---

[2] Defamation per se occurs if a statement, on its face, is defamatory. *Moore v. P.W. Publishing Co.*, 3 Ohio St. 2d 183, 209 N.E.2d 412, 415 (Ohio 1965); *Becker v. Toulmin*, 165 Ohio St. 549, 138 N.E.2d 391, 397 (Ohio 1956). Conversely, a statement is defamatory per quod if it can reasonably have two meanings, one innocent and one defamatory. *Moore*, 209 N.E.2d at 415; *Becker*, 138 N.E.2d at 397. Therefore, when the words of a statement are not themselves, or per se, defamatory, but they are susceptible to a defamatory meaning, then they are defamatory per quod. *Moore*, 209 N.E.2d at 415; *Becker*, 138 N.E.2d at 395.

Brandeberry cannot prove, nor has he set forth any evidence of, damages. Brandeberry states only that the purported statements caused him "consternation and concern as well as time spent repairing business relationships with my customers." Brandeberry Aff., ¶ 7. This hardly rises to the level of "public hatred, ridicule, or contempt" as required under Ohio law. See *Am. Chem. Soc. v. Leadscope,* 2010 Ohio 2725, 2010 WL 2396544, *12 (Ohio Ct. App. June 15, 2010) (citing *Schoedler v. Motometer Gauge & Equip. Corp.*, 134 Ohio St. 78, 15 N.E.2d 958 (Ohio 1938).

Moreover, Brandeberry does not allege, nor do any of the affidavits state, that Brandeberry lost business or customers as a result of the purported defamatory statements. If fact, several of the affiants stated that Brandeberry "did publish the book as promised and I am satisfied with the product he produced." Arnold Aff. ¶ 6; Wright Aff. ¶ 6; Lawrence Aff. ¶ 6. As Brandeberry cannot demonstrate that any purported statements caused him to lose customers or advertising in his yellow pages directory, his claim necessarily fails.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs Yellow Book USA, Inc. and Yellow Book Sales and Distribution Company, Inc. hereby request that the Court grant in its entirety their Motion for Summary Judgment as to Steven M. Brandeberry's counterclaim for defamation.

9

Respectfully submitted,


 /s/ Bryce A. Lenox
Robert P. Johnson (0040109)
Trial Attorney
Bryce A. Lenox (0069936)
THOMPSON HINE LLP
312 Walnut Street, 14th Floor
Cincinnati, Ohio 45202
Telephone: 513-352-6700
Facsimile: 513-241-4771
Robert.Johnson@ThompsonHine.com
Bryce.Lenox@THompsonHine.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2011, a copy of the foregoing was served by the Court's electronic filing system upon the following:

    Darrell L. Heckman
    Harris, Meyer, Heckman & Denkewalter, LLC
    One Monument Square, Suite 200
    Urbana, Ohio 43078
    Attorney for Defendant

                                        /s/ Bryce A. Lenox
                                        Attorney for Plaintiffs

811253.1