UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

YELLOW BOOK USA, INC., et al.,

        Plaintiffs,

-v-

STEVEN M. BRANDEBERRY,

        Defendant.

Case No. 3:10-CV-025

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING BRANDEBERRY'S MOTION FOR SUMMARY JUDGMENT(Doc. #41) AND GRANTING IN PART AND OVERRULING IN PART YELLOW BOOK'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. #47)**

---

This is a battle over who, if anyone, has the exclusive right to use the AMTEL name, marks and related assets to publish yellow-pages telephone directories in several counties in West Central Ohio. The Plaintiffs in this matter are Yellow Book USA, Inc. and Yellow Book Sales and Distribution Company, Inc. and are collectively referred to herein as "Yellow Book." The Defendants are Steven M. Brandeberry ("Brandeberry") and American Telephone Directories, Inc. ("American Telephone").

Yellow Book has brought six (6) claims for relief against both Defendants. The First Claim for Relief is for trademark infringement and false designation and description in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). The Second Claim for Relief is for deceptive trade practices in violation of Ohio Rev. Code § 4165.02. The Third Claim for Relief is for common law trademark infringement. The Fourth Claim for Relief is for misappropriation of trade secrets in violation of the Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61 et seq. The Fifth Claim for Relief is for tortious interference with existing and

prospective business relations and the Sixth Claim for Relief is for unjust enrichment. Brandeberry's Answer to the original Complaint includes one counterclaim for wilfully making false statements.

## PROCEDURAL BACKGROUND

Yellow Book's initial Complaint was against Brandeberry only and was filed on January 22, 2010. (Doc. #1.) Brandeberry answered and brought a counterclaim for the willful making of false statements. (Doc. #9.)

On March 3, 2010, Brandeberry submitted a Motion for Summary Judgment (doc. #13) which was overruled by the Court (doc. #17). The Preliminary Pretrial Conference was held on May 11, 2010. On May 12, 2010, Brandeberry submitted his second Motion for Summary Judgment (doc. #19) which was also overruled by the Court (doc. #22).

Next, Yellow Book was granted leave to file an amended complaint, which it did. (Doc. #25.) This Amended Complaint is the same as Yellow Book's original Complaint but adds American Telephone as a Defendant. Brandeberry and American Telephone answered (docs. #29 and 30), but no mention is made of a counterclaim.

Yellow Book has also received leave of Court to file two Supplemental Amended Complaints to add facts regarding the publication of telephone directories in Union and Logan Counties in Ohio. Brandeberry has answered the Supplemental First Amended Complaint without making a counterclaim. Finally, the Parties have agreed that the Amended Complaint is the operative complaint and discovery on the two Supplemental Complaints will be held in abeyance until the pending Motions for Summary Judgment are decided.

Now before the Court is a Third Motion for Summary Judgment filed by Brandeberry.

(Doc. #41.) Yellow Book has responded and the time has run and Brandeberry has not replied.

Also before the Court is a Motion for Partial Summary Judgment filed by Yellow Book. (Doc. #47.) Brandeberry has responded and Yellow Book has replied to this Motion.

Yellow Book has also filed a Motion for Summary Judgment on Brandeberry's Counterclaim. (Doc. #48). This Motion will be considered in a separate entry.

## FACTUAL BACKGROUND

### The Parties

Yellow Book is an independent publisher of print and Internet-based yellow-pages directories in the State of Ohio and elsewhere throughout the United States. (Affidavit of Maria Mitchell ("Mitchell Aff.") ¶ 2 Mar. 25, 2010.) The company's online directory, yellowbook.com, reaches millions of users via computers and mobile phones. (Id. at ¶ 3.) Since 2007, Yellow Book has published a yellow-pages directory in Champaign County, Logan County, Union County and Madison County, all in Ohio, under the name "Amtel Directories." (Id. at ¶ 4.)

From 1982 to 1994, Herb Burkhalter ("Burkhalter") marketed a yellow page directory in Champaign county known as the AM/TEL Directory. (Deposition of Steven M. Brandeberry ("Brandeberry Aff.") 35, 38 June 6, 2010.) The name AM/TEL was derived from the term "Area Marketing Telephone Directory. (Id. at 35.)

In 1994, Burkhalter approached Brandeberry about purchasing Burkhalter's Champaign County AM/TEL directory. (Id. at 36-37.) The parties began negotiations, and on May 6, 1994, Brandeberry and American Telephone entered into a "Corporate Asset Purchase Agreement" with Burkhalter. (Id. at 35, 42-43, Ex. 3.) That same day, Brandeberry and American Telephone entered into a License Agreement with Burkhalter. (Id. at Ex. 4.)

Beginning in 1995, Brandeberry continuously marketed the AM/TEL Directory in Champaign County. (Id. at 66-67.) He published a yellow pages directory for Logan County from 1998 to 2002, for Union County from 1999 to 2002 and for Madison County from 2000 to 2002. (Id. at 81.) For each of these directories, he used the AMTEL name and marks. (Id. at 81-82.)

In 2002, Brandeberry's yellow pages directories business began having cash flow problems. (Id. 87, 91.) In early 2002, William "Barney" White ("White") approached Brandeberry about buying the yellow pages business. (Id. at 92.) Brandeberry provided a list of what he would have to receive to sell the company. (Id. at 96.) With a few exceptions, White agreed to this list. (Id. at 97.) On July 3, 2002, Brandeberry and White executed a "Contract for Sale of Assets." (Id. Ex. 6.)

Thereafter, from 2002 through 2007, White published annual telephone directories in Champaign County, Logan County, Union County and Madison County. (Affidavit of William N. White ("White Aff.") ¶¶ 8-12 Dec. 22, 2010.) In August 2007, White sold his yellow pages directory business to Yellow Book. (Id. at ¶ 12.) Yellow Book acquired all of the trademarks and trade names associated with the business that White acquired from Brandeberry. (Id.) The acquisition was summarized in a letter dated August 8, 2007 from Yellow Book to BP White Directories, LLC. (Mitchell Aff. Ex. A.)

In July of 2009, Brandeberry again began marketing a yellow pages directory. (Brandeberry Dep. 154-55.) He sent letters to approximately 160 businesses in Champaign County inquiring as to their interest in a new yellow pages directory. (Id. at 156-59.) In this letter, Brandeberry indicated that he was interested in publishing the AMTEL Champaign

-4-

County Telephone Directory again beginning in March of 2010, and asked these potential customers whether they would be willing to shift their advertising dollars to a new Champaign County AMTEL Telephone Directory. (Id. Ex. 9.)

After receiving about 100 responses, Brandeberry began actively soliciting customers for his new directory (Id. at 158, 169-70.) He developed a mock-up of a telephone book which he showed to potential customers during sales calls. (Id. at 182-83.) The mock-up used the AMTEL name and marks. (Id.) Brandeberry also made business cards, envelopes, business documents, contracts and other stationery that used the AMTEL name and marks. (Id. at 170, 172, 189-90, 191, 192-93; Ex. 5, 11, 14, 15, 16, 17.)  In Brandeberry's correspondence with clients and potential clients, he represented himself as the "publisher of American Telephone Directories, Inc., an Ohio-based corporation known as AMTEL" and further asserted that he would be publishing a "full size and complete May, 2010 AMTEL Champaign County Telephone Directory." (Id. at 199,200, Ex. 19.)

In August of 2010, Brandeberry began distribution of his yellow pages directory in Champaign County. (Id. at 261.) On the cover and throughout the directory, Brandeberry uses the AMTEL name and marks. (Id. at 261-63, Ex. 28.)  The name "American Telephone" also appears on the correspondence and on the cover of the telephone book. (Id.) Yellow Book filed its original Complaint in response to Brandeberry's efforts to produce his new yellow-pages telephone directory.

**The Agreements**

The Corporate Asset Purchase Agreement

On May 6, 1994, Area Marketing Telephone Directories, Inc. entered into an agreement

with Brandeberry and American Telephone to sell certain assets. Area Marketing Telephone Directories was the seller and Brandeberry and American Telephone the buyers. The agreement was for the sale of, among other things, all of the customer lists and sales records of Area Marketing Telephone Directories used for the most recent edition of the Champaign County Telephone Directory. This agreement also included Area Marketing's goodwill established over the last twelve (12) years in Champaign County, Ohio.

The purchase price included a down payment and specified monthly payments beginning in June of 1994 and extending until the purchase price is fully paid.[1] All of the capital stock of American Telephone was pledged as security for the timely performance of the purchaser's obligations. Mortgages on certain of Brandeberry's real estate and a life insurance policy were also pledged. The assets were to be returned to Area Marketing in the event of a default on the payments that was not timely cured. This agreement is signed by Burkhalter as President of Area Marketing Telephone Directories, Inc. and by Brandeberry as an individual and as the President of American Telephone.

The License Agreement

Also, on May 6, 1994, Burkhalter licensed American Telephone and Brandeberry to use the name, insignia and logo AM/TEL and AM/TEL DIRECTORIES. This agreement notes that "Burkhalter has developed a distinctive name, insignia and logo, entitled AM/TEL[2] which has been used in the Champaign County telephone directory for years." Burkhalter licensed

---

[1] Brandeberry paid the required installments in full. (Brandeberry Dep. 55, 60-61.)

[2] After acquiring the company and the right to use the AM/TEL name and mark, Brandeberry changed the look of the logo by removing the slash from AM/TEL, thereby making the logo AMTEL. (Brandeberry Dep. 66-67.)

American Telephone and Brandeberry for "the exclusive use of licenses throughout Champaign County, Ohio until Burkhalter has received payment in full of all monies due him on a certain asset purchase agreement, consulting agreement and covenant not to compete agreement."[3] After the payments were made, American Telephone and Brandeberry became the owner of the name, insignia and logo.

The License also included monthly payments beginning in June of 1994 and extending until the license fee was fully paid. The license automatically expired in the event of default. The License Agreement was signed by Brandeberry for himself and for American Telephone and by Burkhalter.

## Contract for Sale of Assets

On July 3, 2002, AM-TEL DIRECTORIES, INC. sold the assets of the business to P.B.J. WHITE DIRECTORIES, LLC. P.B.J. WHITE DIRECTORIES, LLC acquired the assets "in their entirety" as set forth in Exhibit A to this Contract. P.B.J. WHITE DIRECTORIES, LLC also acquired the right to use the name AM-TEL DIRECTORIES. This agreement was signed on July 3, 2002, by Brandeberry for AMTEL DIRECTORIES, INC.[4] and by William N. White for P.B.J. WHITE DIRECTORIES, LLC.[5]

## Letter Agreement

---

[3] Brandeberry paid Burkhalter the fee associated with the License Agreement, and, therefore, became the owner of the AMTEL name and marks. (Brandeberry Dep. 75.)

[4] Brandeberry testified that he signed the contract "as is," and did not notice the his company was misnamed AMTEL Directories, Inc. and AM-TEL Directories therein. (Brandeberry Dep. 107-10.) Brandeberry's company was actually American Telephone.

[5] White changed the corporate name from P.B.J. White Directories, LLC to B.P. White Directories, LLC shortly after the transaction with Brandeberry. (Deposition of William White 9, 30 Jan. 26, 2011.)

On August 8, 2007, Yellow Book set forth an agreement with BP White Directories LLC d/b/a Amtel Directories, to purchase all of BP White Directories' assets relating to the publication and distribution of BP White Directories' Champaign County, Logan County, Union County and Madison County yellow-pages telephone directories. The purchase included, among other things, trademarks, trade names and copyrights and specifically BP White Directories' right, title and interest in the names "Amtel Directories." This Letter Agreement was signed for Yellow Book by its Senior Vice President-Mergers and Acquisitions. It was also signed by William N. White as the owner and CEO of BP White Directories LLC and by William N. White and Amy O'Connor as individuals.

In addition to the Letter Agreement, on August 8, 2007, BP White Directories d/b/a Amtel Directories delivered a Bill of Sale of its assets to Yellow Book. The Bill of Sale was executed pursuant to the Letter Agreement. Finally, on August 8, 2007, William N. White certified that he was the owner and Chief Executive Officer of BP White Directories.

## LEGAL PROVISIONS

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations

must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

Beyond the standard of review, Brandeberry refers to four axioms of law. In support, he cites only three cases in his first Motion for Summary Judgment, none in his Second and none in his Third. He first cites *Hunker v. Whitacre-Greer Fireproffing Co.*, 801 N.E.2d 469 (Ohio Ct. App. 2003). Therein, the Ohio Court of Appeals found that the term "non-exclusive" in a contract permitting fox hunting meant that other people can fox hunt and the holder of the contract does not have the power to exclude others from fox hunting. Brandeberry next cites *Long Beach Association, Inc. v. Jones*, 697 N.E.2d 208 (Ohio 1998). Therein, the Ohio Supreme Court held that, where the terms of a contract are clear and unambiguous, a court cannot in effect

create a new contract by finding an intent not expressed in the clear language used by the parties. Brandeberry's final cite is to *McKay Machine Co. v. Rodman*, 228 N.E.2d 304 (Ohio 1967). Therein, the Ohio Supreme Court found that, where a contract is ambiguous, the language of the contract is construed strictly against the party who prepared it. Brandeberry's fourth axiom is that no one can convey that which he does not own. However, he cites no law or authority, other than himself, for this axiom.

## ANALYSIS

Yellow Book's claims are based upon its assertion that, in August of 2007, it acquired from BP White Directories, LLC d/b/a Amtel Directories ("White/Amtel") the exclusive use of the AMTEL name, marks and related assets regarding the Amtel yellow pages directories in Champaign, Logan, Union and Madison Counties of Ohio. The asset purchase agreement, according to Yellow Book, transferred to it all of White/Amtel's right, title and interest in all trademarks, trade names, URLs, customer lists, mailing lists and all other rights related to the publication and distribution of the telephone directories. Yellow Book alleges that Brandeberry, a former employee of White/Amtel, is now using various White/Amtel trademarks and goodwill without its permission.

The only argument offered by Brandeberry is that Yellow Book does not have the exclusive right to the use of White/Amtel's trademarks and goodwill. He asserts that, as an individual, he has a license to use the name, insignia and logo "AM-TEL" and "AM-TEL DIRECTORIES," and that he did not transfer this exclusive right to P.B.J. White Directories, LLC. Thus, before Yellow Book's claims are addressed, the Court must first consider whether P.B.J. White Directories purchased an exclusive right to the Amtel name and marks from

-11-

Brandeberry.

## Ownership of AM/TEL and AM/TEL DIRECTORIES

Brandeberry's first argument is that he, individually, and American Telephone, his company, both purchased the exclusive right to the AMTEL name, mark and related assets from Burkhalter. This assertion is confirmed by a plain reading[6] of the Corporate Asset Purchase Agreement and the License Agreement.

The Corporate Asset Purchase Agreement, which transfers assets used in the selling of the Champaign County Telephone Directory, is between Area Marketing Telephone Directories, Inc., Burkhalter's company, and Brandeberry, individually, and American Telephone, Brandeberry's company. It is signed by Brandeberry as an individual and by Brandeberry as the President of American Telephone.

The License Agreement grants an exclusive license to use the AM/TEL and AM/TEL DIRECTORIES name, insignia and logo to American Telephone and to Brandeberry. The License Agreement is signed by Brandeberry individually and by Brandeberry as the President of American Telephone.

Yellow Book offers no argument regarding what entity or entities received the AM/TEL and AM/TEL Directories name, insignia and logo from Burkhalter. Thus, both Brandeberry, as an individual, and American Telephone obtained the exclusive use of the AM/TEL and AM/TEL DIRECTORIES name, insignia and logo from Burkhalter.

---

[6]"Where the terms in a contract are not ambiguous, courts must apply the plain language of the contract." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008)(citing *City of St. Marys v. Auglaize County Board of Commissioners*, 875 N.E.2d 561, 566 (Ohio 2007)). In this case, the Court does not find the terms of the contracts at issue to be ambiguous and neither Party argues otherwise.

Brandeberry next agues that only American Telephone and not he, as an individual, sold the AMTEL name, marks and related assets to P.B.J. White Directories. This argument is supported by a plain reading of the Contract for Sale of Assets.

The Contract for Sale of Assets provides that P.B.J. White Directories, LLC will acquire the assets, in their entirety, of AM-TEL Directories, Inc. The Contract for Sale of Assets is signed by Brandeberry for AMTEL Directories, Inc. and is signed by White for P.B.J. White Directories, LLC.

Since Brandeberry testified that he signed the contract "as is," and did not notice that his company was misnamed AMTEL Directories, Inc. and AM-TEL Directories therein (Brandeberry Dep. 107-10), and since Brandeberry's company was actually American Telephone, the Court will assume that the parties intended that American Telephone was selling its assets, in their entirety, to P.B.J. White. Irregardless, pursuant to a plain reading of the Contract for Sale of Assets, the assets of American Telephone were sold to P.B.J. White Directories, LLC. There is no evidence that Brandeberry sold any assets that he may have owned, as an individual, to P.B.J. White Directories, LLC.

The Letter Agreement provides for the sale of all of BP White Directories, LLC's assets to Yellow Book, including all of BP White's interest in the name "Amtel Directories." Thus, according to a plain reading of the letter agreement, BP White sold all of the assets that it owned to Yellow Book. However, BP White did not own any interest that Brandeberry, as an individual, may have had so Yellow Book does not own any interest that Brandeberry, as an individual, may have had. According to a plain reading of the contracts presented as evidence by the Parties, Brandeberry did not transfer any interest that he held as an individual to anyone.

-13-

But what about American Telephone? A plain reading of the Contract for Sale of Assets provides that P.B.J. White acquired the assets, in their entirety, of American Telephone. The assets being acquired are also listed in Exhibit A to the Contract. One of the assets listed is "Intan. Asset Asset Purchase" and another is "Intan. Asset License Agrmt." From this, the Court concludes that the sale by American Telephone to P.B.J. White included American Telephone's ownership of the exclusive use of the AM/TEL name, marks, and related assets. Thus, pursuant to the Contract for Sale of Assets, American Telephone gave up its right to use the AM/TEL name, marks and related assets and sold those rights to P.B.J. White Directories, LLC.

American Telephone is one of the Defendants in this case. American Telephone has given up their ownership of the AM/TEL name, marks and related assets. However, Brandeberry's individual interest in the AM/TEL name, marks and related assets faces one more challenge.

Yellow Book argues that Brandeberry has abandoned his rights in the AM/TEL name, marks and related assets. Section 1127 of Title 15 of the United States Code provides, in relevant part, that a mark is deemed to be abandoned:

> [w]hen its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right to a mark.

Brandeberry asserts that abandonment of a trademark by an owner can cause the owner to lose his right to sue a new user for infringement, but it does not deprive the owner of the right to use. However, Brandeberry has cited no caselaw in support of this assertion and the Court is unable to find any.

Courts have determined that trademark rights derive from the use of the trademark in commerce and not from the registration of the mark. *Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992). Further, the owner of a mark will lose the exclusive use of a mark if the owner fails to actually use the mark. *Id.* at 954-55. But it is not Brandeberry, in this case, who is claiming exclusive use of the AM/TEL name, marks and related assets. It is Yellow Book.

Further, courts treat the abandonment of a trademark as a defense to an infringement claim. *See Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 31 (1900). And, again, it is not Brandeberry who has brought the infringement claim in this case. Abandonment is not Brandeberry's defense.

Thus, while Yellow Book's argument that it is entitled to exclusive use of the AM/TEL name, marks and related assets because Brandeberry has abandoned the use of AM/TEL, may be relevant as a defense to a trademark lawsuit brought by Brandeberry, it is not relevant to a lawsuit that Yellow Book has brought. Yellow Book is not entitled to exclusive use of the AM/TEL name, marks and related assets because Brandeberry is also entitled to the use of these same AM/TEL names, marks and related assets.

**Defendant's Motion for Summary Judgment**

This Motion for Summary Judgment (doc. #41) is written as a motion for summary judgment made by Brandeberry.  To the extent that it is a motion for summary judgment brought by Brandeberry, the Motion is granted. Brandeberry has not contractually given up the right to use the AM/TEL name, marks and related assets. Thus, Yellow Book's complaint, which is based upon Yellow Book having an exclusive right to the AM/TEL name, marks and related

-15-

assets, against him fails.

There are no genuine issues of material fact and Brandeberry is entitled to judgment as a matter of law on Yellow Book's claims. Brandeberry's Motion for Summary Judgment (doc. #41) is GRANTED.

### Plaintiffs' Motion for Partial Summary Judgment

Yellow Book seeks summary judgment on their claims for trademark infringement (First, Second and Third Claims for Relief) and tortious interference with business relations against Brandeberry and American Telephone. Each will be addressed seriatim.

Trademark Infringement

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a federal cause of action for infringement of marks and trade dress that have not obtained federal registration. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Section 43(a) provides for actions for trademark infringement because the use of another's trademark, name, symbol or device, may create confusion as to the "origin" of the goods or as to an "affiliation, connection, or association" between the user and the owner of the trademark, name, symbol or device.[7] *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1430 (S.D. Ohio 1990).

In this case, as determined above, Brandeberry has not given up his right to use the AM/TEL name, marks and related assets. Thus, Yellow Book cannot show that it is entitled to protection of the AM/TEL name, marks and related assets from their use by Brandeberry.

---

[7]Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02, mirrors federal trademark law and the analysis is the same as for a claim brought under section 43(a) of the Lanham Act. *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1431 (S.D. Ohio 1990).

However, Yellow Book now owns the rights to the AM/TEL name, marks and related assets that American Telephone previously owned. Yet, Yellow Book does not have the exclusive right to the use of the AM/TEL name, marks and related assets. Thus, Yellow Book cannot sustain a trademark infringement action against American Telephone either.

Tortious Interference With Business Relations

Tortious interference with contract claims (existing business relations) arise where a defendant "intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999). The elements of a tortious interference with contract claim are: (1) the existence of a valid contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages. *Id.* Tortious interference with prospective business relations claims are similar, but involve interference with a prospective business relationship rather than a contract. *See Tomazic v. City of Sandusky*, No. E-08-037, 2008 WL 5050432 at *2 (Ohio Ct. App. Nov. 26, 2008).

Ohio law imposes the burden of proving "lack of privilege" or "improper interference" on the plaintiff. *Id.* Also, once a privilege is shown, "actual malice" must be demonstrated to defeat the privilege. *Smith v. Ameriflora 1992, Inc.*, 644 N.E.2d 1038, 1044 (Ohio Ct. App. 1994).

When determining whether an actor's conduct is improper, or lacks justification, consideration is given to the following factors: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interest of the other with which the actor's conduct interferes; (4) the

interest sought to be advanced by the actor; (5)  the proximity or remoteness of the actor's conduct to the interference; (6) the social interests in protecting the freedom of contract and the interference with such; and (7) the relations between the parties. *Siegel*, 707 N.E.2d at 860. Fair competition may constitute a justification for an interference, and, where fair competition is established, the preceding factors need not be considered. *Id.*

Yellow Book claims that Brandeberry was aware of Yellow Book's business relations and advertising contracts with Yellow Book's customers in Champaign County. This assertion is supported by the evidence that Brandeberry himself sought to re-enter that market to sell a competing yellow pages directory.

Further, Brandeberry approached a significant number of Yellow Book's customers, and sold them advertising in his competing yellow pages directory while representing that his directory was the "new" Amtel directory in Champaign County. According to Yellow Book, Brandeberry competed improperly by passing off his directory as that of Yellow Book. Finally, Yellow Book asserts that summary judgment on Yellow Book's intentional interference claims is appropriate for all of the same reasons as Yellow Book's trademark infringement claims.

There is evidence that Brandeberry interfered with Yellow Book's contracts and business relationships. However, Yellow Book has not shown that Brandeberry's interference was not justified. Brandeberry, of course, may compete with Yellow Book, and Yellow Book does not have the exclusive right to use the AM/TEL name, marks and related assets. Yellow Book has not shown that Brandeberry's interference was not fair competition.

The evidence indicates that American Telephone was also aware of Yellow Book's advertising contract with Yellow Book's customers in Champaign County. Further, the material

used to approach Yellow Book's customers uses the AM/TEL name and mark and indicates that the "new" directory would be published by American Telephone. The "new" directory also has the name American Telephone on the cover.

Since American Telephone had given up its right to use the AM/TEL name, marks and related assets, American Telephone's interference is not justified. Except for proof of damages, the remaining elements of Yellow Book's tortious-interference claim against American Telephone are also satisfied by unrefuted evidence.

## Conclusion

There are no genuine issues of material fact and Yellow Book is not entitled to judgment as a matter of law on its trademark infringement and tortious interference claims against Brandeberry. Further, there are no genuine issues of material fact and Yellow Book is not entitled to judgment as a matter of law on its trademark infringement claims against American Telephone. However, there are no genuine issues of material fact and Yellow Book is entitled to judgment as a matter of law on its tortious interference claim against American Telephone. Thus, Yellow Book's Motion for Partial Summary Judgment (doc. #47) is GRANTED IN PART and OVERRULED IN PART.

## **SUMMARY**

Yellow Book is not entitled to the exclusive use of the AM/TEL name, marks and related assets. Thus, none of Yellow Book's claims against Brandeberry are actionable. However, Yellow Books tortious interference claim against American Telephone is actionable and Yellow Book is granted summary judgment on the liability portion of this claim.

Brandeberry's Motion for Summary Judgment (doc. #41) is GRANTED. Yellow Book's

Motion for Partial Summary Judgment (doc. #47) is GRANTED IN PART and OVERRULED IN PART. Yellow Book's misappropriation of trade secrets and unjust enrichment claims against American Telephone remain to be adjudicated as does Yellow Book's damages on its tortious interference claim against American Telephone.

**DONE** and **ORDERED** in Dayton, Ohio this Third day of May, 2011.

                                                  **s/Thomas M. Rose**

                                                  THOMAS M. ROSE
                                      UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record