UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**YELLOW BOOK USA, INC., et al.,**

    **Plaintiffs,**

-v-

**STEVEN M. BRANDEBERRY,**

    **Defendant.**

Case No. 3:10-CV-025

Judge Thomas M. Rose

---

**ENTRY AND ORDER OVERRULING YELLOW BOOK'S MOTION FOR SUMMARY JUDGMENT ON BRANDEBERRY'S COUNTERCLAIM (Doc. #69)**

---

  Now before the Court is a second Motion for Summary Judgment on Defendant Steven M. Brandeberry's ("Brandeberry's") Counterclaim. (Doc. #69.) This second Motion for Summary Judgment is brought by Plaintiffs Yellow Book USA, Inc. and Yellow Book Sales and Distribution Company, Inc. (collectively referred to herein as "Yellow Book").  It is now fully briefed and ripe for decision. A procedural background will first be set forth followed by a factual background, the standard of review, the relevant legal standards and an analysis of the Motion.

**PROCEDURAL BACKGROUND**

  On May 3, 2011, Brandeberry's Motion for Summary Judgment was granted, and Yellow Book's Motion for Partial Summary Judgment was granted in part and overruled in part. (Doc. #61.) The Court found that Yellow Book is not entitled to the exclusive use of the AM/TEL name, marks and related assets so none of Yellow Book's claims against Brandeberry are actionable. However, Yellow Book was granted summary judgment on the liability portion of its

tortious interference claim against American Telephone Directories, Inc. ("American Telephone"). Yellow Book's misappropriation-of-trade-secrets and unjust enrichment claims against American Telephone remain to be adjudicated as does Yellow Book's damages on its tortious interference claim against American Telephone. Also remaining was the issue of a Counterclaim, brought by Brandeberry, for defamation.

Yellow Book brought a Motion for Summary Judgment on Brandeberry's Counterclaim for defamation. (Doc. #48.) This first Motion for Summary Judgment was found Moot by this Court because there was no Counterclaim before the Court at the time. Since then, Brandeberry has, with leave of Court, filed an Amended Answer and Counterclaim (doc. #67) and Yellow Book has again sought summary judgment (doc. #69). It is Yellow Book's second Motion for Summary Judgment that is now before the Court.

## FACTUAL BACKGROUND

A factual background that identifies the relevant parties, their agreements and their actions has previously been set forth. It is incorporated herein and will not be repeated. In addition to the Rule 56 evidence that has already been provided, Brandeberry has now submitted affidavits from himself and nine other individuals.

Affiant Dwight Patterson states that, on January 26, 2010, Angela Zappia of Yellow Book told him that Brandeberry had wrongfully not refunded money to former customers of his when he had a previous book and that Brandeberry "was a kind of con artist." (Affidavit of Dwight Patterson ¶ 4 June 27, 2011.) Affiant Terry Rittenhouse states that Yellow Book representatives told him (or her) that Brandeberry "was a liar and a thief and a con man." (Affidavit of Terry Rittenhouse ¶ 4 June 24, 2011.) Affiant Ray Woodruff states that Yellow

Book representatives told him that Brandeberry was not in business, that he would not be able to sell a book and that, if he paid Brandeberry any money, the book would not be published and he [Woodruff] would not get any money back. (Affidavit of Ray Woodruff ¶ 4 June 23, 2011.) Affiant Robert Arnold states that Yellow Book representatives told him that Brandeberry took people's money without returning it, that he [Brandeberry] had no right to put out a book and that there was a legal action against him. (Affidavit of Robert Arnold ¶ 4 June 20, 2011.) Affiant Polly Lawrence states that Yellow Book representatives told her that Brandeberry had done illegal things in the past, that Brandeberry had been fired by Yellow Book, that Brandeberry's book was illegal, that Brandeberry's book would not be published and implied that she should stop payment on her check to Brandeberry. (Affidavit of Polly Lawrence ¶ 3 June 24, 2011.) Affiant John Canestraro states that Yellow Book representatives told him that Brandeberry's book was illegal and implied that he [Canestraro] would not get his money back. (Affidavit of John Canestraro ¶ 2, June 20, 2011.) Affiant Matt Perry states that Yellow Book employees told him that Brandeberry would not publish a book, that he [Perry] should not pay Brandeberry and that he [Perry] would not get his money back. (Affidavit of Matt Perry ¶ 4 June 19, 2011.) Affiant Tim Hetico states that Yellow Book representatives told him that his [Brandeberry's] book was illegal and he would not publish a book. (Affidavit of Tim Hetico ¶ 4 June 20, 2011.) Affiant Mack Wright states that Yellow Book representatives told him that Brandeberry's book was illegal. (Affidavit of Mack Wright ¶ 4 June 20, 2011.) Finally Brandeberry states that he published a Champaign County Telephone Directory for the year 2010; that all of his customers who paid for ads had their ads placed in the directory; that he has never kept a deposit from a customer whose book was not published; and that he is not a thief, a con man or a liar. (Affidavit

of Steven M. Brandeberry ¶¶ June 27, 2011.)

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot

rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified

pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

## RELEVANT LEGAL PROVISIONS

Defamation is a "false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace, or affects him adversely in his trade or business." *Knox v. Neaton Auto Products Manufacturing, Inc.*, 375 F.3d 451, (6th Cir. 2004)(citing *Sweitzer v. Outlet Communications, Inc.*, 726 N.E.2d 1084 (Ohio Ct. App. 1999)). The elements that must be shown to prove a defamation claim are: (1) a false and defamatory statement (2) about the plaintiff (3) published without privilege to a third party (4) with fault of at least negligence on the part of the defendant (5) that was either defamatory per se or caused special harm to the plaintiff. *Northeast Ohio Elite Gymnastics Training Center, Inc. v. Osborne*, 916 N.E.2d 484, 487 (Ohio Ct. App. 2009). Defamation per se occurs when material is defamatory on its face. *Id.* Defamation per quod occurs when material is defamatory through interpretation or innuendo. *Id.*

The Supreme Court has decided that the First Amendment to the U.S. Constitution restricts state defamation law. *Wampler v. Higgins*, 752 N.E.2d 962, 963 (Ohio 2001). The Ohio Supreme Court has also found that the Ohio Constitution may restrict defamation law to the extent that the alleged defamation may be protected speech. *Id.* at 969. Opinions are protected by free speech provisions in the Ohio Constitution while statements of fact are not. *Id.* at 969-70.

When determining whether a defamatory statement is protected as opinion instead of fact, a court must consider the totality of the circumstances. *Id.* at 970. "Specifically, a court should consider the specific language at issue, whether the statement is verifiable, the general context of

the statement, and the broader context in which the statement appeared." *Id.* (quoting *Vail v. Plain Dealer Publishing Co.*, 649 N.E.2d 182, 185 (Ohio 1995)) The weight given to any one factor varies depending upon the circumstances of each case. *Id.* at 977. Finally, the determination of whether an alleged defamatory statement is protected is a question of law for the court. *Id.*

In addition to possibly being protected as an opinion, an alleged defamatory statement may be protected if it is true. "Truth is a complete defense to a claim for defamation." *Novotny v. Reed Elsevier*, No. C-3-05-424, 2007 U.S. Dist. LEXIS 66608 at *77 (S.D. Ohio Sept. 10, 2007)(citing *Ed. Schory & Sons, Inc. v. Society National Bank*, 662 N.E.2d 1074, 1083 (Ohio 1996)).

## ANALYSIS

Brandeberry alleges, in his Counterclaim, that Yellow Book defamed him. Yellow Book seeks summary judgment on this claim asserting that the statements in the nine affidavits submitted by Brandeberry are true, are protected opinions or are simply not defamatory.

Yellow Book asserts that a specific Yellow Book employee must make the defamatory statement. Brandeberry asserts that Yellow Book or one of its agents acting in the scope of their employment must make the defamatory statement.

In one instance, the Affiant identifies alleged defamatory statements as made by a specific Yellow Book employee by name. In the other Affidavits, the Affiant identifies the alleged defamatory statements as made by representatives of Yellow Book.

Whether or not the individual who makes an alleged defamatory statement is identified by name is irrelevant for purposes of summary judgment. What is relevant is whether the alleged

defamatory statement was made by an agent of Yellow Book, and the Affidavits submitted by Brandeberry at least allege that the individuals who made the alleged defamatory statements are agents of Yellow Book. Thus, summary judgment cannot be granted to Yellow Book based upon whether the Rule 56 evidence submitted by Brandeberry identifies an agent of Yellow Book by name. The analysis next turns to the truth of certain alleged defamatory statements.

### Truth of the Alleged Defamatory Statements

At least two Affiants assert that they were told that Brandeberry's telephone directory was illegal. However, this alleged category is not defamatory because the statement is true. As previously determined, American Telephone was not entitled to use the AM/TEL name and marks in Champaign County. Use of the AM/TEL name in or on a phone book published by American Telephone was illegal.

### Free Speech Protection

Yellow Book argues that the remaining statements made by its alleged agents are opinions and, thus, protected by the free speech provisions of the Ohio Constitution. To determine whether the remaining statements are protected opinions, the Court must consider the totality of the circumstance and the four factors in particular.

#### Specific Language At Issue

The remaining alleged defamatory statements include assertions that Brandeberry had not refunded money to former customers when he had a previous book and that, if money was paid to Brandeberry, a book would not be published and no money would be returned. Other alleged defamatory statements include assertions that Brandeberry was a "kind of con artist," a liar and a thief; that Brandeberry had done illegal things in the past, that Brandeberry had been fired by

Yellow Book.

Under this first factor, the common usage or meaning of the allegedly defamatory words are analyzed to determine whether the alleged defamatory words have precise meanings and are thus likely to give rise to clear factual implication. *Wampler*, 752 N.E.2d at 978. Words that are "loosely definable" or "variously interpretable" cannot, in most contexts, support an action for defamation. *Id.*

In this case, some of the alleged defamatory statements are "loosely definable" and some are not. For example, he term "con artist" is loosely definable. However the statements regarding whether a book would be published; whether money would be refunded; and whether Brandeberry was a thief, had done illegal things in the past and was fired by Yellow Book are less ambiguous and have precise meanings. Therefore, at least some of the alleged defamatory statements are specific enough to avoid being opinions.

Verifiability

The alleged defamatory statements about whether a book would be published, whether refunds were necessary and made and whether Brandeberry was a thief, had done illegal things in the past and had been fired by Yellow Book are objectively capable of proof or disproof. Therefore, these statements are verifiable and support a finding that this speech is factual and not protected by the Ohio Constitution.

Further, when the individual uttering a statement makes a representation that she or he has a private and firsthand knowledge substantiating the statement of opinion, the statement of opinion becomes as damaging as a statement of fact. *Scott v. News-Herald*, 496 N.E.2d 699, 707 (Ohio 1986). In this case, the individuals allegedly uttering the alleged defamatory statements

did not specifically represent that they had firsthand knowledge, but, since the statements were made firsthand and not attributed to anyone else, the individual hearing the alleged defamatory statements could reasonably have inferred that the statements were made with firsthand knowledge.

### General Context

Under general context, the Court addresses more than the alleged defamatory statements in isolation. *Wampler*, 752 N.E.2d at 980. Objective cautionary terms place the individual hearing the alleged defamatory statements on notice that what is being heard is the opinion of the individual uttering the statements. *Scott*, 496 N.E.2d at 707. Thus, the immediate context in which the allegedly defamatory statements appear is analyzed. *Wampler*, 752 N.E.2d at 980.

In this case, the general context in which the alleged defamatory statements were made is conversations between what are alleged to be Yellow Book representatives and what are alleged to be business people. Whether these conversations were in person or via some other means is not clear from the Rule 56 evidence. They do, however, appear to be conversations between two or more individuals. Further, the alleged defamatory statements do not include any cautionary terms. In this context, an average individual would expect at least some of the alleged defamatory statements to be factual.

### Broader Context

In addition to considering the allegedly defamatory statements as they appear in context, the Court must examine "the broader social context into which the statement fits." *Id.* at 981. The Court looks for the signal that the type of speech is likely to convey to the reader. *Id.* Different types of speech have widely varying social conventions which signal to the reader the

likelihood of a statement's being either fact or opinion. *Scott*, 496 N.E.2d at 708.

In this case, the broader social context is a solicitation by a competitor. The purpose of the solicitations was to sell ads in a telephone book to be published by Yellow Book. Brandeberry was competing with Yellow Book.

The receiver of a solicitation, particularly where there is apparent competition for the product, can be expected to view the assertions made in the solicitations as opinions. The receiver would likely not accept this type of an assertion as fact.

### The Totality of the Circumstances

Based upon the totality of the circumstances, an individual that heard the alleged defamatory statements would accept at least some of them as statements of facts. While one of the factors of the four-part test weighs in favor of opinion, the weight to be given to any one factor varies depending upon the circumstances of each case. In this case, given the totality of the circumstances, reasonable minds would conclude that, at least some of the alleged defamatory statements were statements of facts. These alleged defamatory statements are not protected by the Ohio Constitution's free speech provisions.

### **Damages**

Yellow Book argues that Brandeberry's defamation claim fails because Brandeberry has no damages. The type of defamation alleged by Brandeberry is defamation per se or defamation that is defamatory on its face. When a statement is defamation per se, a plaintiff may maintain an action for defamation and recover damages without pleading or proving special damages. *Wagner v. Circle W. Mastiffs*, 732 F. Supp.2d 792 (S.D. Ohio 2010)(citing *Becker v. Toulmin*, 138 N.E.2d 391, 395 (Ohio 1956)). Said another way, in cases of defamation per se, the law

presumes the existence of damages. *Id.*(citing *Wampler*, 752 N.E.2d at n.8). Thus, Brandeberry does not have to show damages at this time.

## CONCLUSION

Brandeberry has presented Rule 56 evidence, when viewed in a light most favorable to him, that Yellow Book, or agents of Yellow Book, made false and defamatory statement about him to a third party with fault of at least negligence on the part of Yellow Book that were defamatory per se. Yellow Book has shown that some of the alleged defamatory statements are true, and, thus, privileged. However, some of the alleged defamatory statements are not privileged as being protected under the Ohio Constitution's free speech provisions. Thus, there are genuine issues of material fact and Yellow Book is not entitled to judgment as a matter of law on Brandeberry's Counterclaim for defamation. Yellow Book's Motion for Summary Judgment on Brandeberry's Counterclaim is OVERRULED.

**DONE** and **ORDERED** in Dayton, Ohio this Eighth day of July, 2011.

                                         s/Thomas M. Rose
                                    _____
                                           THOMAS M. ROSE
                               UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record