UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**YELLOW BOOK USA, INC., et al.,**

        **Plaintiffs,**

-v-

**STEVEN M. BRANDEBERRY,**

        **Defendant.**

Case No. 3:10-CV-025

Judge Thomas M. Rose

## FINAL JUDGMENT

This matter comes now before the Court on an opinion and remand rendered by Judge Boggs of the Sixth Circuit Court of Appeals. *Yellowbook, Inc. v. Brandeberry*, 708 F.3d 837 (6th Cir. 2013). The Plaintiffs in this matter are Yellow Book USA, Inc. and Yellow Book Sales and Distribution Company, Inc. (collectively referred to herein as "Yellowbook"[1]). The Defendants are American Telephone Directories, Inc. ("American Telephone") and Steven M. Brandeberry ("Brandeberry").

### PROCEDURAL HISTORY

Yellowbook's original Complaint was filed on January 22, 2010, against Defendant Brandeberry. (Doc. #1.) On February 8, 2010, Brandeberry answered and counterclaimed. (Doc. #9.) On February 11, 2010, Yellowbook answered the counterclaim. (Doc. #11.) Brandeberry then filed a Motion for Summary Judgment (doc. #13) which was overruled without prejudice to renewal (doc. #17).

---

[1] Yellowbook changed its name to hibu on January 1, 2013. However, for consistency with prior pleadings, the name Yellowbook will be used herein.

A Preliminary Pretrial Conference was conducted on May 11, 2010, during which various deadlines were set. (Doc. #18.) On May 12, 2010, Brandeberry filed a second Motion for Summary Judgment (doc. #19) which was subsequently denied (doc. #22). On July 13, 2010, Yellowbook filed its First Amended Complaint ("FAC") which added American Telephone as a Defendant. (Doc. #25.) Brandeberry and American Telephone answered Yellowbook's FAC.[2] (Docs. #29 and 30.)

The Parties then entered into a Protective Order (doc. #31) and proceeded with depositions. On December 30, 2010, the discovery deadline and the deadline for filing motions for summary judgment were extended. (Doc. #40.) On February 11, 2011, Brandeberry filed his third Motion for Summary Judgment (doc. #41), and on February 18, 2010, Yellowbook filed a Motion for Partial Summary Judgment (doc. #47) and a Motion for Summary Judgment on Brandeberry's Counterclaim (doc. #48).

With leave of Court, on February 24, 2011, Yellowbook filed its Supplemental FAC (doc. 49) which Brandeberry and American Telephone answered (doc. #50). Yellowbook then received leave of Court to file its Second Supplemental FAC (doc. #54) which Brandeberry and American Telephone answered (doc. #56).

Yellowbook's Second Supplemental FAC, the operative complaint in this matter, brought six (6) claims for relief. The First Claim for Relief was for trademark infringement and false designation and description in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). The Second Claim for Relief was for deceptive trade practices in violation of Ohio Rev. Code § 4165.02. The Third Claim for Relief was for common law trademark

---

[2]Brandeberry's Answer to the FAC did not include a counterclaim.

infringement. The Fourth Claim for Relief was for misappropriation of trade secrets in violation of the Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61 et seq. The Fifth Claim for Relief was for tortious interference with existing and prospective business relations and the Sixth Claim for Relief was for unjust enrichment. Brandeberry brought one Counterclaim for defamation.

In response to the motions for summary judgment, the Court found, on May 3, 2010, that none of Yellowbook's claims against Brandeberry were actionable. (Doc. #61.) The Court did, however, determine that Yellowbook's misappropriation of trade secrets and unjust enrichment claims against American Telephone remained to be adjudicated as did Yellowbook's damages on its tortious interference claim against American Telephone. (Doc. #61.)

Next, the Court determined that Brandeberry's counterclaim had been abandoned, (doc. #62), so Brandeberry amended his latest answer to include a Counterclaim for defamation (doc. #67). Then, Yellowbook's Motion for Summary Judgment on Brandeberry's Counterclaim was overruled. (Doc. #75.)

This matter was unsuccessfully mediated on June 27, 2011. (Doc. #72.) A Final Pretrial Conference, preceded by Yellowbook's Motion In Limine, was conducted on July 28, 2011.

Yellowbook dismissed its misappropriation of trade secrets and unjust enrichment claims against American Telephone just before trial. A three-day trial to a jury was conducted from August 22, 2011 to August 24, 2011.

The Jury awarded $104,406.90 of compensatory damages and $10,406.90 in punitive damages to Yellowbook on its tortious interference claim against American Telephone. The Jury also awarded attorneys' fees, to be determined by the Court, to Yellowbook. The Jury found for

Brandeberry on his defamation Counterclaim and awarded $10 in nominal damages.

On September 6, 2011, Yellowbook submitted its Petition for Attorneys Fees. (Doc. #105.) Therein, Yellowbook sought an award of $209,009.30. On October 27, 2011, the Court declined to award any attorneys fees to Yellowbook for various reasons. (Doc. #109.)

On November 7, 2011, Yellowbook appealed this Court's Entry and Order Granting Brandeberry's Motion for Summary Judgment and Granting In Part and Overruling In Part Yellowbook's Motion for Partial Summary Judgment. (Doc # 62). Yellowbook also appealed this Court's Entry and Order Overruling Yellowbook's Motion for Attorneys' Fees. (Doc. 109.)

On February 27, 2013, the Sixth Circuit issued its decision on Yellowbook's appeal. *Yellowbook*, 708 F.3d 837. Therein, the Appeals Court found that "American Telephone is Brandeberry for practical purposes," and that the 2002 contract between Brandeberry and William "Barney" White ("White") transferred all of the rights to the use of the AMTEL mark to White. *Id.* at 847. White subsequently sold all of the rights to the use of the AMTEL mark to Yellowbook in 2007, and Yellowbook used the AMTEL mark in publishing its telephone directories thereafter. *Id.* at 842. The Appeals Court also found that, even if Brandeberry did not transfer an individual right to the AMTEL mark to White, Brandeberry abandoned any such right. *Id.* at 847.

The Appeals Court reversed this Court's decision granting summary judgment to Brandeberry and denying summary judgment to Yellowbook, and the matter was remanded for a determination of damages for trademark infringement. *Id.* at 850. The Appeals Court indicated that, "as damages have already been assessed for tortious interference against American Telephone, additional compensatory damages may be duplicative, unless Brandeberry continues

to infringe the AMTEL mark after judgment." *Id.*

The Appeals Court also reversed and remanded this Court's decision denying attorneys' fees to Yellowbook for several reasons. *Id.* According to the Appeals Court, where Yellowbook "simply failed to 'show its work' in calculating the lodestar amount, the district court abused its discretion in denying fees altogether." *Id.* at 849. Further, since the concern with quarter-hour billing increments is over-billing, fee reductions are a proper exercise of discretion and fee denials are not. *Id.* In addition, instead of finding that the hourly rates charged by Yellowbook's attorneys to be unreasonable, "the district court should indicate what a reasonable rate in Dayton for such litigation would be, provide some explanation for that conclusion, and reduce the fee award accordingly." *Id.* at 850. Also, requests for more documentation and percentage reductions will generally be the appropriate response to concerns about what attorneys' fees were actually paid by Yellowbook, instead of flat denial. *Id.* The Appeals Court found that a downward adjustment in attorneys' fees due to limited results would not be an abuse of discretion, but such a consideration here must be made in light of the reversal of summary judgment. *Id.* Finally, the Appeals Court said that the remand "does not… preclude a denial of fees on discretionary grounds." *Id.*

Following the issuance of a mandate on this reversal and remand, the Court gave the Parties twenty-one (21) days to submit initial briefs that address the injunctive relief and additional damages, if any, that should be awarded and the attorneys' fees that should be awarded. The Parties were also given fourteen (14) days to submit simultaneous reply briefs.

Yellowbook submitted a Post-Appeal Brief (doc. #132) and a Reply (doc. #134). The

time has run and neither American Telephone nor Brandeberry has submitted a brief or reply.[3] This matter is, therefore, ripe for decision.

## ANALYSIS

Yellowbook offers three arguments in its Post-Appeal Brief. The first is that Brandeberry, American Telephone and all other Brandeberry-owned or operated entities should be permanently enjoined from using the AMTEL name and mark. The second is that the damages awards should be extended to Brandeberry and all other Brandeberry-owned or operated entities. The third is that Yellowbook is entitled to an award of attorneys' fees in the amount of $209,0009.30. Each of these arguments is relevant to the Appeals Court's reversal and remand and will be addressed below.

### **Injunctive Relief**

Yellowbook's trademark infringement claim against American Telephone was dismissed on summary judgment because this Court found that Yellowbook was not entitled to the exclusive use of the AMTEL mark. (Doc. #61.) The Appeals Court has now determined that Yellowbook was entitled to the exclusive use of the AMTEL mark. *Yellowbook*, 708 F.3d at 845-46. The Appeals Court has also determined that Brandeberry retained no rights in the AMTEL mark. *Id.* at 846. Finally, the Appeals Court determined that "American Telephone is Brandeberry for practical purposes…." *Id.* at 847. Therefore, American Telephone and

---

[3]Brandeberry's counsel has been granted leave to withdraw based upon the argument that Brandeberry has not paid his legal bills and is in the process of filing for bankruptcy. (Doc. #128.)

Brandeberry should be permanently enjoined from the use of the AMTEL mark.[4]

In addition to past infringement, there is evidence that American Telephone registered the AMTEL DIRECTORIES name and mark with the Ohio Secretary of State on May 14, 2009, and that this registration does not expire until May 14, 2014. (Yellowbook Post-Appeal Brief, Ex. 1.) There is also evidence that Brandeberry registered the business name "AMTEL DIRECTORIES, LLC" on June 9, 2011. (Id. at Ex. 2.) Thus, there is evidence that mechanisms are in place for American Telephone and Brandeberry to continue using the AMTEL mark.

Pursuant to 15 U.S.C. § 1116(a), an injunction to prevent the illegal use of a trademark may include a provision directing the defendant to file with the court and serve on the plaintiff, within thirty (30) days after service of the injunction, a written report made under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Because there is evidence that mechanisms are in place for American Telephone and Brandeberry to continue using the AMTEL mark, such a written report made under oath is appropriate in this case.

Finally, there is evidence in this case that Brandeberry contacted and sold advertising to former customers of the entities that were using the AMTEL mark. Therefore, he should be enjoined from continuing to do so.

A Permanent Injunction is entered as follows:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Defendants Steven M. Brandeberry and American Telephone Directories, Inc. and their related companies, officers,

---

[4] Yellowbook requested such an enjoinment in its Second Supplemental FAC, the operative complaint in this matter.

directors, subsidiaries, affiliates, agents, employees, successors in interest, and all those in concert or active participation with them are hereby ordered:

1. To refrain from using in any manner the AMTEL trademark or any other mark or trade name confusingly similar thereto;

2. To refrain for a period of three years from selling advertising to, and from directly or indirectly contacting or soliciting, any customer or advertiser who has been a customer or advertiser of White/AMTEL or Yellowbook in the last five years, or who has been directly or indirectly solicited by them to purchase advertising through illegal, deceptive or fraudulent tactics;

3. To turn over to Yellowbook or destroy all yellow pages directories, sales collateral or similar documents and websites in American Telephone's or Brandeberry's control which bear or otherwise use the AMTEL name and mark; and,

4. To immediately assign to Yellowbook and/or cancel the AMTEL trademark registration with the Ohio Secretary of State.

In addition, American Telephone and Brandeberry must file with the court and serve on Yellowbook, within thirty (30) days after service of this Permanent Injunction, a written report made under oath setting forth in detail the manner and form in which American Telephone and Brandeberry have complied with this Permanent Injunction.

## **Responsibility for Damages**

The Appeals Court remanded this matter for a determination of damages for trademark infringement. *Yellowbook*, 708 F.3d at 850. They also noted that, since damages for tortious

interference have already been assessed against American Telephone for tortious interference, "additional compensatory damages may be duplicative, unless Brandeberry continues to infringe the AMTEL mark after judgment." *Id.*

Yellowbook concedes that "it has not sustained additional damages above and beyond those previously awarded by the jury for the time period before the verdict (prior to August 2011)." (Yellowbook Post-Appeal Brief, p. 7.) Thus, no additional damages will be awarded on remand.

Yellowbook also argues that it has sustained "significant additional damages on account of Brandeberry's and American Telephone Directories' improper use of the AMTEL name and mark from the date of the verdict to present." (Id.) However, evidence of these alleged additional damages has not been presented to the Court. Therefore, the Court declines to award additional damages at this time.

Yellowbook also argues that any and all damage awards must be levied against American Telephone, Brandeberry and any other Brandeberry-related entity that have utilized the AMTEL name and mark. This argument is well-founded since the Appeals Court found that "American Telephone is Brandeberry for practical purposes," and that Brandeberry retained no rights in the AMTEL mark. *Yellowbook*, 708 F.3d at 846-47.

Therefore, it is hereby **ORDERED, ADJUDGED AND DECREED** that Plaintiff, Yellowbook Inc., is to recover from Defendants, American Telephone Directories, Inc. and Steven M. Brandeberry, and any other Brandeberry-owned entities, the total amount of $114,475.90 ($104,069.00 in compensatory damages and $10,406.90 in punitive damages), attorneys' fees and post judgment interest pursuant to 28U.S.C. § 1961. The amount of

attorneys' fees due to Yellowbook will be separately determined by the Court.

## Attorneys' Fees

Litigants in the United States generally follow the "American Rule" regarding attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The "American Rule" is that each party in a lawsuit ordinarily bears its own attorneys' fees unless an exception applies. *Id.*

One such exception to the "American Rule" is that, in Ohio, if punitive damages are awarded, an aggrieved party may also recover reasonable attorneys' fees. *Galmish v. Cicchini*, 734 N.E.2d 782, (Ohio 2000). This provision of an award of attorneys' fees is not specified in a statute but is mandated by the court-made law of Ohio.

The Court has the discretion to determine the amount of a fee award. *Hensley*, 461 U.S. at 437. Also, the fee applicant has the burden of establishing an entitlement to an award of attorneys' fees. *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990).

In the Sixth Circuit, a reasonable attorney-fee award is determined by calculating the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 551 (6th Cir. 2008); *Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006). The result is the lodestar amount which is the reasonable fee to which counsel is entitled. *Imwalle*, 515 F.3d ast 552.

This matter has been remanded for various reasons, more fully identified above, for a determination of the amount of attorneys' fees to be awarded to Yellowbook. And, as stated by the Appeals Court, this remand "does not… preclude a denial of fees on discretionary grounds." *Yellowbook*, 708 F.3d at 850.

Yellowbook now seeks, as it did previously, an attorneys' fee award in the amount of

$209,009.30. In support of this award, Yellowbook has previously submitted a "true and accurate schedule detailing these fees." However, the total amount of the fees detailed on this "true and accurate" schedule is $209, 010.00.

Yellowbook also now indicates, under the oath of Jeffrey T. Cox, that Yellowbook's attorney's bill summary reflects that its attorneys and paralegals spent 640.25 hours on this matter. However, the "true and accurate schedule," which is the only detail provided to the Court, reflects a total of 638.5 hours spent.

Thus, the dollar amount requested by Yellowbook and the hours allegedly expended are not consistent with the only evidence that has been provided to the Court after two opportunities to get it right. The Court recognizes that these differences are minor and will not decline to award attorneys' fees on this basis alone.

The Court will use the evidence of the hours and dollars expended from the "true and accurate schedule" provided by Yellowbook. Thus, the Court will consider an amount of $209.010.00 and hours expended of 638.5.

In its earlier Opinion, the Court faulted Yellowbook for providing only the lawyer's time detail and not the amount actually paid by Yellowbook. Yellowbook has now provided evidence that indicates that Yellowbook has paid at least the amount for attorneys' fees identified on the "true and accurate" schedule, and in some cases more. Thus, the Court may proceed to consider the whether the number of hours and the hourly rate sought by Yellowbook are reasonable.

### Reasonable Number of Hours

When determining reasonable hours, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in

time when the work was performed." *Wooldridge*, 898 F.2d at 1177. The documentation provided in support of the hours charged must be sufficiently detailed to enable the court to determine, with a high degree of certainty, that such hours were actually and reasonably expended in the prosecution of the litigation. *Bench Billboard Company v. City of Toledo*, 759 F. Supp.2d 905, 913 (N.D. Ohio 2010)(citing *United Slate Tile and Composition Roofers v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.3d 495, n.2 (6th Cir. 1984)), *rev'd on other grounds*, 499 F. App'x 538 (6th Cir. 2012). Where the documentation is inadequate, the court may reduce the award accordingly. *Id.* (citing *Hensley*, 461 U.S. at 433)).

In this case, the Court finds that the 638.50 hours, as indicated on the "true and accurate" schedule provided by Yellowbook, were reasonably expended in this litigation. In support, local and well-respected attorney Jeffrey T. Cox has testified that 640.25 hours is both "reasonable and necessary in light of the complexity of the trademark claims, the discovery and motion practice involved, and to properly address the related issues in the matter." (Affidavit of Jeffrey T. Cox ("Cox Aff.") ¶ 9 April 19, 2013.)

### **Reasonable Hourly Rate**

The Court has a broad discretion in determining what constitutes a reasonable hourly rate. *Hudson v. Reno*, 130 F.3d 1993, 1208 (6th Cir. 1997), *abrogated on other grounds*. However, the reasonable hourly rate is generally the prevailing market rate in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895 (1984). The prevailing market rate is the rate that lawyers of comparable skill and experience can reasonably expect to command in the venue

of the court of record.[5] *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). However, courts may look to other markets, such as a national market, an area of specialization or any other appropriate market for a prevailing market rate. *Louisville Black Police Officers Organization v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983).

The reasonable hourly rate must be adequately compensatory to attract competent counsel yet must avoid producing a windfall for lawyers. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 638 (6th Cir. 1979). However, the reasonable hourly rate is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation. *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618 (6th Cir. 2007).

In this case, according to the "true and accurate" schedule provided by Yellowbook, it seeks an hourly rate of $410 for Robert P. Johnson, $345 in 2010 and $360 in 2011 for Bryce A. Lenox, $205 for Diane E. MacLeod, $190 for Michael B. Stottman, $215 for Joseph B. Russell, $210 for Matthew R. Fong, $195 for Lisa A. Smith, $140 for Barbara W. Silbersack, and $120 for Barbara Schiller, with the vast majority of hours being charged by Bryce A. Lenox.

Yellowbook has presented no evidence that any of these hourly rates are reasonable. It

---

[5] An attorney's customary client billing rate is one reliable indicator of that attorney's prevailing market rate in the applicable venue. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995).

has, however, presented evidence that a average rate of $326.44 is reasonable. (Cox Aff. ¶ 10.) Mr. Cox determined an average rate by dividing the $209,009.30 requested by Yellowbook by the 640.25 hours that he uses as having been expended. The average hourly rate calculated using the data provided on Yellowbook's "true and accurate" schedule is $209.010.00 divided by the hours expended of 638.5 resulting in an average rate of $327.34.

While the Court has no evidence that the individual hourly rates charged by Yellowbook's attorneys are reasonable, there is evidence that the average rate of $327.34 requested by Yellowbook is reasonable. This average rate is reasonable because Mr. Cox has testified that a rate very close to that is reasonable and because the Court finds that the hourly rates underlying this average rate are necessary to adequately compensate competent counsel performing the type of work that was performed here.

Using the average rate of $327.34 from the "true and accurate" schedule provided by Yellowbook is reasonable. Also, the 638.5 hours requested by Yellowbook in the "true and accurate" schedule are reasonable notwithstanding adjustments. Therefore, a fee award of $209,010 is reasonable notwithstanding adjustments.

## Adjustment of Award

Two adjustments are relevant for consideration in this matter. One is an adjustment for the using of quarter-hour billing increments and the other is for limited success. Each will be considered seriatim.

### Adjustment for Quarter-Hour Billing Increments

The "true and accurate" billing summary provided by Yellowbook is in quarter-hour increments. Quarter-hour billing increments invite downward adjustment of the reasonable

number of hours. *Yellowbook*, 708 F.3d at 849; *see also* Douglas R. Richmond, *The New Law Firm Economy, Billable Hours and Professional Responsibility*, 29 Hofstra L. Rev. 207,234 (2000). As one district court has observed, "very few telephone calls last more than one-tenth of an hour and… it rarely takes more than one-tenth of an hour to read an incoming letter or write a short outgoing letter." *In re Tom Carter Enterprises*, 55 B.R. 548, 549 (Bankr. C.D. Cal. 1985).

Further, several courts have found that keeping time in quarter-hour increments is a fee-enhancing, rather that a fee-constraining mechanism. *Bench Billboard*, 759 F. Supp.2d at 914. "Billing in quarter-hour increments generates a fee that is 15% higher than billing in a tenth of an hour." *Id.* at 915. "To compensate for inflation imposed by quarter-hour billing increments, other courts have reduced the attorney's fee award by 20%." *Id.*(citing various opinions). Finally, the Court of Appeals has determined that "quarter-hour billing cannot mathematically warrant a fee reduction greater than 60% relative to tenth-of-an-hour billing…." *Yellowbook*, 708 F.3d at 849.

In this case, the "true and accurate" billing records submitted by Yellowbook include 272 distinct time entries. Of those, approximately 112 at least partly include telephone conferences, and at least ten of them entail charging the regular hourly rate for travel. If each of the 272 time entries were considered over-billed by 9 minutes as a result of using quarter-hour increments instead of tenth-hour increments, the total adjustment would be a reduction of 6.4%.

 In sum, due to billing in quarter-hour increments, a fee-enhancing mechanism, and because Yellowbook's attorney charged a regular hourly rate for travel, Yellowbook's fee award is reduced by 5%. One other possible adjustment will next be considered.

**Adjustment for Limited Success**

A court must consider the relationship between the amount of attorneys' fees awarded and the results obtained. *Hensley*, 461 U.S. 424. The court has the discretion to adjust the award depending upon a plaintiff's success, the complexity of the case and the risk of recovery. *Dowling v. Litton Loan Servicing*, L.P., No. 05-CV-098, 2008 WL 906042 at *1 (S.D. Ohio Mar. 31, 2008)(citing *Building Services Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995)). The court also has discretion to adjust the award downward if the award results in an excessive amount because the claimant has achieved only partial success. *Imwalle*, 515 F.3d at 552. Finally, the award may be lowered if the claims on which the claimant prevailed were sufficiently distinct from the claims upon which the claimant failed or the claimant did not achieve a sufficient degree of success to justify the fees. *Id.*(citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)).

To be fully successful, a plaintiff need not prevail on every claim or legal theory to receive fully compensatory attorneys' fees. *Hensley*, 461 U.S. at 435. Yet, partial success may require reduction even where the plaintiff's claims were interrelated, nonfrivolous and raised in good faith. *Id.* at 436. A court is to consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. For a plaintiff to be the prevailing party, there must be some actual benefit to the plaintiff either in terms of monetary damages, injunctive relief or a voluntary change in a defendant's conduct. *Woolridge*, 898 F.2d at 1174.

Where a plaintiff has presented distinctly different claims based upon different facts and legal theories, work on an unsuccessful claim is not considered to have been expended in pursuit of the ultimate result achieved. *Imwalle*, 515 F.3d at 552. Said another way, attorneys' fees

-16-

should not be awarded for work on unsuccessful claims that are based upon different facts and legal theories. *Warnock v. Archer*, 380 F.3d 1076, 1084 (8th Cir. 2004). However, where the plaintiff's claims involve common facts or related legal theories, the claims should not be treated as distinct claims and focus should be on the significance of the overall relief obtained. *Imwalle*, 515 F.3d at 552.

Finally, a nominal damages award makes the party that is successful on the claim a prevailing party. *Id.* at 555. The award of nominal damages, however, highlights the party's failure to prove actual, compensable injury, and the only reasonable fee for the party receiving nominal damages is usually no fee at all. *Id.* at 555-56.

In this case, Yellowbook brought six claims for relief and Brandeberry brought one counterclaim. Considering the opinion on appeal, Yellowbook has been successful on four of its six claims and the remaining two were dropped on the eave of trial. Brandeberry was successful on his counterclaim, although he was awarded only nominal damages.

Yellowbook's claims were against Brandeberry and American Telephone and involved trademark infringement and Brandeberry's counterclaim involved defamation. Although all of these claims generally arose out of a set of facts and circumstances, the facts and circumstances and the law applicable to Yellowbook's claims are different from the facts and circumstances and law applicable to Brandeberry's counterclaim.

Thus, the Court cannot conclude that Yellowbook's claims and Brandeberry's counterclaim involve common facts or related legal theories and cannot conclude that the focus should be on the significance of the overall relief obtained. Some allocation is necessary, yet the "true and accurate" billing records submitted by Yellowbook do not distinguish between the

claims and counterclaim and the Court is unable to discern the difference based upon these billing records.

The relationship between the attorneys' fees awarded and the overall results that were obtained are to be considered. Unable to use the time records submitted, the Court turns to the number of claims. Yellowbook made six claims. Giving Yellowbook the benefit of the doubt, it was successful on all six. Brandeberry made one counterclaim. Giving Brandeberry the benefit of the doubt, he was successful on it. Thus, Yellowbook was successful on six claims, or 85.7% of the claims litigated by the parties, and Brandeberry was successful on one, or 14.3% of the claims litigated by the parties.

Using the number of claims successfully litigated as a basis, Yellowbook's attorneys' fee award will be reduced by 14.3%. This reduction recognizes that at least some of Yellowbook's attorney's time was spent litigating Brandeberry's counterclaim for defamation which entailed different evidence and which also entailed different law from Yellowbook's claims.

## Total Adjustments

Again giving Yellowbook the benefit of the doubt, the two adjustments will not be compounded. Yellowbook's total attorneys' fee award will be adjusted downward by 19.3%, 5% based upon quarter-hour billing increments and 14.3% based upon the results obtained.

## CONCLUSION

A Permanent Injunction is hereby entered against American Telephone and Brandeberry and their related companies, officers, directors, subsidiaries, affiliates, agents, employees, successors in interest, and all those in concert or active participation with them. The terms of this Permanent Injunction are as set forth above.

American Telephone and Brandeberry are both liable for the damages awarded by the jury. This final judgment is also set forth above.

Finally, Yellowbook's reasonable attorneys' fee award in the amount of $209,010 is adjusted downward by 19.3%. Thus, Yellowbook is awarded attorneys' fees in the amount of $168,671.07 for which American Telephone and Brandeberry are jointly and severally liable.

**DONE** and **ORDERED** in Dayton, Ohio this Twenty-Eighth Day of May, 2013.

                                                **s/Thomas M. Rose**

                                            _____
                                                  THOMAS M. ROSE
                                       UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Steven M. Brandeberry at his last address of record
American Telephone Directories, Inc. at its last address of record